United States District Court
Southern District of Texas
FILED

DEC 31 1991

Jesse E. Clark, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
ENTERED

DEC 31 1991

Jesse E. Clark, Clerk
By Deputy:
M. Gammon

|  |  |
|---|---|
| ARTURO DANIEL ARANDA,<br>      Petitioner<br><br>VS.<br><br>JAMES A. COLLINS, DIRECTOR<br>TEXAS DEPARTMENT OF CRIMINAL<br>JUSTICE, INSTITUTIONAL<br>DIVISION,<br>      Respondent | § § § § § § § § § § § |

CIVIL ACTION NUMBER

V-89-13

---

# A M E N D E D   M E M O R A N D U M

Came on to be considered before the Court the Petition for Writ of Habeas Corpus filed by Petitioner Arturo Daniel Aranda (hereinafter "Petitioner"), pursuant to 28 U.S.C. § 2254, in which relief is sought from a conviction for capital murder and a sentence of death entered by the 24th Judicial District Court of Victoria County, Texas. The Court, without opposition from Respondent James A. Lynaugh, formerly Director, Texas Department of Corrections (hereinafter "Respondent"), granted a stay of execution. Respondent submitted Respondent's Answer, Motion for Summary Judgment and Brief in Support Thereof in opposition to the Petition for Writ of Habeas Corpus, and in response Petitioner filed Petitioner's Opposition to Respondent's Motion for Summary Judgment.

Having considered the pleadings on file and the state court

record below, the Court issues the following ruling on the Petition for Writ of Habeas Corpus and the Respondent's Motion for Summary Judgment.

## PROCEDURAL HISTORY

The Petitioner attacks his conviction and sentence of death entered by the 24th Judicial District Court, Victoria County. The conviction resulted from the second trial of the Petitioner on the offense of murdering Mr. Pablo E. Albidrez, a Laredo Police Officer, (hereinafter "Officer Albidrez"), acting in the lawful discharge of his official duties. Originally the Petitioner and his brother, Juan Jose Aranda, were to be tried together for the murder of Officer Albidrez. A joint trial began in the 49th Judicial District Court, Webb County, Texas. A mistrial was declared when efforts to impanel a jury failed.

The second trial was held for the Aranda brothers before the Hon. Joe E. Kelly, sitting by designation as Judge of the 49th Judicial District Court in September, 1978. During *voir dire*, however, the Petitioner became ill and in lieu of continuing the joint trial, the trial court severed Petitioner's case. The trial continued for Petitioner's brother Juan, who was convicted and sentenced to life. The Petitioner's trial was continued to January 1979, and on January 19, 1979 the court *sua sponte* ordered a change of venue to Victoria County. On April 10, 1979 a jury in the 24th Judicial District Court in Victoria found Petitioner guilty of

2

capital murder. (R. vol. 10 p. 1,052.)[1]

The trial court then conducted the punishment phase of the trial, and the jury returned three special verdicts of "yes" to the special questions required to be submitted by TEX. CODE CRIM. PROC. ANN. art. 37.071(b) (Vernon's 1981 and Supp. 1991)[2]. (R. vol. 10, p. 1,103), (Petitioner's Ex.1, pgs. 2-3) (judgment). The trial

_____

[1]     "R." refers to the state court record which consists of the court reporter's transcript of the proceedings in the Petitioner's trial. The transcript begins <u>after</u> Petitioner's case was severed from his brother's, but before venue was changed to the 24th Judicial District Court in Victoria County, Texas. Handwritten at the top of each volume is the volume number. The record consists of volumes two (2) through eleven (11).

        "Tr." refers to the Transcript of Pretrial Motions, as designated by this Court. The Transcript consists of volumes one (1) and two (2), and supplements one (1) and two (2).

        "JJA Tr." refers to the transcript of Juan Jose Aranda's capital murder trial, and consists of one (1) volume. "JJA R." refers to the record in Juan Jose Aranda's trial and consists of volumes one (1) and two (2). "JJA App." refers to the transcript of Juan Jose Aranda's appeal, and consists of one (1) volume.


[2]     Article 37.071(b) of the Texas Code of Criminal Procedure requires affirmative answers to the following questions before a defendant may be sentenced to death:

        (1)  whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;

        (2)  whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and

        (3)  if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased.

Tex. Code Crim. Proc. art. 37.071(b) (Vernon's Supp. 1991).

3

court assessed the death penalty against Petitioner, but stayed the execution date pending automatic appeal to the Texas Court of Criminal Appeals. The trail court denied the Petitioner's motion for new trial and on the same day the Petitioner filed his Notice of Appeal.

The Texas Court of Criminal Appeals affirmed the Petitioner's conviction and sentence. <u>Aranda v. State of Texas</u>, 736 S.W.2d 702 (Tex. Crim. App. 1987). The Petitioner filed a petition for writ of certiorari to the United States Supreme Court which was eventually denied. <u>Aranda v. Texas</u>, 108 S.Ct. 2916 (1988). The trial court ordered that the Petitioner's execution be set for a date certain, and Petitioner sought habeas corpus relief and a stay of execution from the 24th Judicial District Court, Victoria County, Texas and the Texas Court of Criminal Appeals. Relief was denied by both courts. <u>Ex parte Aranda</u>, No. 9539-A, District Court Victoria County, Texas, 49th Judicial District, Order of April 13, 1989; <u>Ex parte Aranda</u>, Writ No. 18,014-13, Texas Court of Criminal Appeals, Order of April 18, 1989 (*per curiam*). The Petition for Writ of Habeas Corpus was then filed with this Court.

The Petition raises the following twenty-nine claims for relief pursuant to 28 U.S.C. § 2254:

> (1) The evidence was insufficient to support either a verdict of guilty beyond a reasonable doubt or a sentence of death.
>
> (2) Petitioner's uncounseled, custodial "confession" was improperly admitted.
>
> (3) Juan Aranda's uncounseled, custodial "confession" was improperly admitted.

· 000953

(4) Petitioner was improperly refused a full and fair hearing on his motion to exclude evidence illegally seized pursuant to an unconstitutional stop and seizure.

(5) Petitioner's trial was unreasonably and prejudicially delayed.

(6) The trial court improperly and unnecessarily declared a mistrial and dismissed already qualified jurors.

(7) Trial Judge Kelly improperly refused to recuse himself from presiding at Petitioner's trial.

(8) The trial court improperly changed venue on its own motion, and over Petitioner's objection, from Webb County to a demographically different venue in Victoria County.

(9) The jury selection process in Victoria County systematically excluded and discriminated against Hispanics and deprived Petitioner of a jury fairly representative of the community.

(10) Venirepersons Clay, Petty, Turner, House and Lemke were improperly excused for cause when they voiced general scruples against the death penalty.

(11) Jurors were improperly administered an oath that prevented them from considering the potential penalty when deciding issues of fact or otherwise deliberating on their answers to the statutory sentencing questions.

(12) The trial court improperly refused to excuse for cause a juror who admitted bias against a defendant who exercised his Fifth Amendment right to remain silent.

(13) The State withheld and suppressed material facts and witnesses.

(14) The trial court rulings prevented Petitioner from developing and introducing evidence consistent with his theory of defense.

(15) Numerous improper and prejudicial statements by the District Attorney misled the jury and interfered with its determination of Petitioner's guilt or innocence; prevented the jury from weighing and giving effect to mitigating evidence; and rendered impossible an individualized and reliable determination that death is the appropriate punishment.

(16) Petitioner's death sentence is based on evidence of

5

·ʳ 000954

a constitutionally void prior conviction.

(17) Petitioner's death sentence is based on erroneous unreliable and inflammatory evidence of prior convictions.

(18) Petitioner's death sentence is based on erroneous, unreliable, and inflammatory evidence of unadjudicated prior offenses.

(19) Petitioner's death sentence is based on erroneous, unreliable, and inflammatory hearsay and reputation evidence.

(20) The Texas Death Sentencing Statute, on its face and as applied in this case, improperly allows into evidence at the sentencing phase of a capital case all evidence deemed relevant regardless of how misleading, unreliable or inaccurate.

(21) The Texas Death Sentencing Statute, on its face and as applied in this case, provides inadequate guidance to the jury on its ability to consider and act upon mitigating evidence proffered by the defense as the basis for a sentence less than death.

(22) The trial court failed to instruct the jury on the nature, function and definition of mitigating evidence, and the manner in which their consideration of the mitigating evidence could be included in their responses to the questions required under Tex. Code Crim. Proc. art. 37.071 (Vernon's Supp. 1991).

(23) The Texas Death Sentencing Statute operated to deprive Petitioner of effective assistance of counsel by transforming available mitigating evidence into aggravating evidence, and thereby preventing counsel from developing and presenting evidence that would have called for a sentence less than death.

(24) The Texas Death Sentencing Statute, on its face and as applied in this case, provides inadequate guidance to the jury on the meaning of critical terms in the special questions.

(25) Court rulings precluded Petitioner from presenting, and having the jury consider, evidence mitigating his blameworthiness and otherwise mitigating against the appropriateness of the death penalty.

(26) The Court misinstructed the jury as to the meaning of critical terms in the Texas Death Sentencing Statute.

6·

000355

(27) Petitioner was denied prompt judicial review of the jury's determination to impose death by a court with state-wide jurisdiction.

(28) Petitioner was denied the effective assistance of counsel at trial and on direct appeal.

(29) The trial court improperly fostered an intimidating and inflammatory atmosphere that undermined the presumption of Petitioner's innocence.

In addition, the Petitioner has filed a Motion for Evidentiary Hearing and a Motion for Discovery. Respondent has responded to the claims for relief of the Petitioner and in addition filed a Motion for Summary Judgment.

As stated at the outset, this habeas corpus proceeding is in this Court pursuant to Title 28 U.S.C. § 2254 which prescribes the basis for relief and the extent to which the findings of the 24th Judicial District Court of Victoria County, Texas, and the Texas Court of Criminal Appeals are to be relied upon by this Court. Section 2254(d) provides that the determination of a factual issue made by a state court, after a hearing, "shall be presumed correct" unless the applicant proves the existence of one or more of the circumstances listed in paragraphs (1) to (7) of subsection (d) or unless the habeas court concludes that the state court determination is not fairly supported by the record[3].

---

[3]     28 U.S.C. § 2254(d) provides in part,

. . . a determination after a hearing on the merits of a factual issue, made by a State court. . . shall be presumed correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit --

7

In _Sumner v. Mata_, 449 U.S. 539, 101 S.Ct. 764 (1981) the Supreme Court explained the purpose of § 2254 as follows:

> When it enacted the 1966 amendment to 28 U.S.C. § 2254, Congress specified that in the absence of the previously enumerated factors one through eight, the burden shall rest on the habeas petitioner, whose case by that time had run the entire gamut of a state judicial system, to

> (1) that the merits of the factual dispute were not resolved in the State court hearing;

> (2) that the fact finding procedure employed by the State court was not adequate to afford a full and fair hearing;

> (3) that the material facts were not adequately developed at the State court hearing;

> (4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;

> (5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;

> (6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or

> (7) that the applicant was otherwise denied due process of law in the State court proceeding;

> (8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence in support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record:

8

. ◄ 000957

> establish 'by convincing evidence that the factual
> determination of the State court was erroneous'. 28
> U.S.C. § 2254(d). Thus, Congress meant to insure that
> a state finding not be overturned merely on the basis of
> the usual 'preponderance of the evidence' standard in
> such a situation.

449 U.S. at 551, 101 S.Ct. 771.

This Court is not required to hold an evidentiary hearing unless factual issues are in dispute and the resolution of these issues is a prerequisite to deciding a constitutional challenge. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745 (1963); see also Buxton v. Lynaugh, 879 F.2d 140 (5th Cir. 1989) *cert. denied sub nom.*, Buxton v. Collins, ____ U.S. ____, 110 S.Ct. 3295 (1990) (evidentiary hearing not required if state court hearing was sufficient). The presumption of correctness attaches both to the determinations of a state trial court and those of the a state appellate court. Sumner v. Mata, 449 U.S. at 546, 101 S.Ct. at 769.

When "the petitioner has been accorded a fair and complete opportunity to adduce evidence in state court, neither the petitioner nor the state should be put to the wasteful exercise of repetition in federal court." Guice v. Fortenberry, 661 F.2d 496, 500 (5th Cir. 1981) *(en banc)*, *reh'g denied*, 726 F.2d 752 (1984). Therefore, the state courts' factual findings are presumed correct as provided in § 2254(d), and Petitioner's Motion for an Evidentiary Hearing is denied.

With these principles in mind, the Court outlines the factual background of the present case.

9

000958

## RELEVANT FACTS

In the early morning hours of July 31, 1976 Officer Albidrez was killed by a gun shot wound to the chest. The only witnesses to the shooting were Laredo Police Officer Candelario Viera, (hereinafter "Officer Viera"), the Petitioner and the Petitioner's brother Juan Jose Aranda. The record reveals that Officer Viera, a plain clothes officer who was on patrol that night, observed a station wagon with out of town license plates traveling toward the bank of the Rio Grande River. Being an experienced narcotics officer, and familiar with various narcotics crossings on the Rio Grande, Officer Viera believed the station wagon was heading toward a known narcotics crossing point.

When the station wagon arrived at the river two persons, later identified as the Petitioner and his brother Juan, exited the wagon and walked to the water's edge. A few minutes later the brothers returned to the wagon and drove it closer to the river. Sometime later, Officer Viera observed the wagon leaving the river riding lower than it had when it arrived. Officer Viera also observed bulky objects in the back of the wagon that had not been there earlier. Officer Viera followed the wagon and radioed for assistance to make a stop. As Officer Albidrez neared the scene in his marked patrol car, he spoke with Officer Viera over the police radio, and the two decided that Officer Albidrez should attempt to stop the wagon by pulling along side it with the patrol car's lights flashing.

After the wagon failed to stop, Officer Albidrez pulled his

10

000559

car in front of the wagon so that it was perpendicular to the wagon. Officer Viera pulled his car up behind the wagon. Gunshots ensued. What caused the shootout is not clear. In a matter of minutes, however, Officer Albidrez who had made his way to the passenger side of Officer Viera's car, was killed. According to the record, the brothers fled the scene but not without being wounded. The Petitioner was found a short distance away laying face down with bullet wounds to the back and hand. Upon his apprehension the Petitioner was taken to Mercy Hospital in Laredo for medical attention. The Petitioner's brother was also apprehended.

While at the hospital the attending nurse removed a .38 caliber pistol from the waist of the Petitioner's pants. Doctors removed the bullet fragments from the Petitioner's back, but left other fragments in the Petitioner's hand. The Petitioner was given medication for the pain.

Later that afternoon or evening, the Petitioner was taken to the Webb County Jail, where he was given his *Miranda* warnings, interrogated and eventually gave a written statement wherein he admitted that he shot at Officer Albidrez. According to the record, the Petitioner and his brother were interrogated separately, were allowed to confer with each other out of the presence of witnesses, and the Petitioner was allowed upon his request to confer with his probation officer in San Antonio.

·( 000360

## CLAIMS FOR RELIEF

**Claim One: The evidence was insufficient to support either a verdict of guilty beyond a reasonable doubt or a sentence of death.**

The Petitioner claims that the evidence adduced at trial was not sufficient (1) to support a finding of guilt and (2) to support the imposition of the death penalty. On those grounds the Petitioner claims his conviction violates due process under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781 (1979), as well as Eighth Amendment guarantees against the arbitrary and unreliable imposition of a death sentence under Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368 (1982).

When testing the sufficiency of the evidence, a federal habeas court must review the evidence in the light most favorable to the prosecution and determine whether a rational trier of fact could have found the existence of facts necessary to establish the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. at 319, 99 S.Ct. at 2789 (1979); Fierro v. Lynaugh, 879 F.2d 1276 (5th Cir. 1989), *cert. denied*, ___ U.S. ___, 110 S.Ct. 1537 (1990).

A. Due Process

In this case the State was required to show that the Petitioner, either intentionally or knowingly, caused the death of an individual who the Petitioner knew to be a peace officer and who was acting in the lawful discharge of an official duty. Tex. Penal Code Ann. §§ 19.03(a)(1), and 19.02(a)(1) (Vernon's 1989). At trial there was no question that the Petitioner was in the station

' 000961

wagon stopped by Officers Viera and Albidrez, that the Petitioner knew Officer Albidrez was a police officer, and that the Petitioner fired a gun in Officer Albidrez's direction.

The crucial question was "Did the petitioner fire the shot that killed Officer Albidrez?". It is clear that the evidence presented in this case was sufficient for a jury to find beyond a reasonable doubt that Petitioner did fire the fatal shot. First, a .38 caliber pistol was taken from the Petitioner at the hospital where he was taken after the officers on the scene discovered a gunshot wound on his back (R. vol. 8, p. 384). Furthermore, .38 caliber spent casings were found on the passenger side of Officer Viera's car, where Officer Albidrez had positioned himself (R. vol. 8 pg. 201, vol. 9 pgs. 415-417, vol. 10 pg. 1112). The slug recovered from Officer Albidrez's chest came from the gun taken from the Petitioner at the hospital (R. vol. 9, pgs. 520, 524). Furthermore, Juan Aranda stated that he saw the Petitioner shoot at Officer Albidrez (R. vol. 10, p. 875), and as the Petitioner's statement reflects,

> My brother and I went to the river to pick up the marihuana. Then I saw a policeman pass us and stop in front of us. He walked to my side of the station wagon, which my brother was driving. I was sitting on the passenger side. I saw the policeman coming and I had the gun in my hand so I fired one shot at him, then he shot me on my left hand. After I got hit on the hand, I leaned towards the driver's seat then every time the policeman would shoot I would shoot back at him until my gun was empty.

(R. vol. 10, p. 1,144).

Because the evidence clearly supports the conviction under the Texas capital murder statute, the Petitioner's right to due process

13

has not been violated. See Jackson v. Virginia, 443 U.S. at 319, 99 S.Ct. at 2789 (1979); Fierro v. Lynaugh, 879 F.2d 1276 (5th Cir. 1989).

### B. Eighth Amendment

The Petitioner also contends that the evidence was insufficient to support a finding that he killed, attempted to kill or had any intent to kill Officer Albidrez, and thus the imposition of a death sentence was disproportionate to the particular facts in the Petitioner's case. Enmund v. Florida, 458 U.S. 781, 102 S.Ct. 3368 (1982).

When a federal habeas court reviews a claim that a death sentence is disproportionate to a petitioner's crime, the court must examine

> the entire course of the state-court proceedings against the defendant in order to determine whether, at some point in the process, the requisite factual finding as to the defendant's culpability has been made. If it has, the finding must be presumed correct by virtue of 28 U.S.C. § 2254(d), . . . and unless the habeas petitioner can bear the heavy burden overcoming the presumption, the court is obliged to hold that the Eighth Amendment as interpreted in *Enmund* is not offended by the death sentence.

Cabana v. Bullock, 474 U.S. 376, 106 S.Ct. 689 (1986).

Based on its earlier ruling mandating "individualized consideration as a constitutional requirement in imposing the death sentence", Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954 (1978), the Supreme Court in *Enmund v. Florida* held that the State of Florida violated the Eighth Amendment when it attributed to Enmund, an aider and abetter, the culpability of those defendants who actually

14

000963

killed[4]. Enmund v. Florida, 458 U.S. at 798, 102 S.Ct. at 3377.

"'The death penalty is said to serve two principal social purposes: retribution and deterrence of capital crimes . . .' Unless the death penalty when applied to those in Enmund's position measurably contributes to one or both of these goals, it is 'nothing more than the purposeless and needless imposition of pain and suffering,' and hence an unconstitutional punishment". Enmund v. Florida, 458 U.S. at 798, 102 S.Ct. at 3377 (citations omitted). Compare Tison v. Arizona, 481 U.S. 137, 107 S.Ct. 1676 (1987) (Enmund is not applicable to felony murderers whose degree of participation in the crimes was major rather than minor, and where the record supports a finding of reckless indifference to human life).

A review of the state court record indicates that to the extent that the Petitioner challenges the proportionality of his death sentence, the requisite factual findings as to the

---

[4] In Enmund v. Florida the petitioner was charged with capital murder for the shooting death of the Kerseys, an elderly couple. On April 1, 1975 Sampson Armstrong and possibly his wife Janette robbed and shot the Kerseys. Enmund, who drove the getaway car, was apparently not involved in either the shooting or any plan to kill the Kerseys. The jury, however found Enmund guilty of two counts of first-degree murder and one count of robbery, and at a separate hearing sentenced Enmund to death. Enmund appealed his sentence and the Florida Supreme Court remanded the case to the trail judge for written findings. The trial judge, finding four statutory aggravating circumstances and no statutory mitigating circumstances, sentenced Enmund to death on each of the murder counts. The Florida Supreme Court affirmed the convictions and sentences, and the United States Supreme Court granted certiorari with regards to whether the death is a valid penalty under the Eight Amendment for one who neither killed, attempted to kill, or intended to kill.

000904

Petitioner's culpability were made.[5]

Based on the reasoning in *Cabana v. Bullock*, and the Petitioner's failure to make a claim or present any new evidence to overcome the presumption of correctness, see Cabana v. Bullock, 474 U.S. at 387-90, 106 S.Ct. at 697-99, and Sumner v. Mata, 449 U.S. 539, 101 S.Ct. 764, the Court finds that the evidence was sufficient to support a death sentence and that Eighth Amendment concerns as set out in *Enmund v. Florida* were satisfied.

### Claim Two: Petitioner's uncounseled, custodial "confession" was improperly admitted.

#### A. New Evidence

The Petitioner claims that his confession was coerced, and that the trial and appellate courts erroneously concluded the Petitioner's confession was voluntary. Anticipating this Court's legal duty to presume the findings of the state trial and appellate courts correct, see discussion *supra*, pgs. 7-9, the Petitioner claims that new evidence supports a finding that Petitioner's confession was not voluntary[6].

---

[5]    The Petitioner briefly argues that the evidence was insufficient to cooberate his confession and as a result there is a risk that the jury's verdict and death sentence were unreliable. The Petitioner cites Beck v. Alabama, 447 U.S. 625, 100 S.Ct. 2382 (1980) in support of this claim. Although the Court fails to find support in Beck for the Petitioner's argument, the Court need not consider the argument. As is clear from the record there is substantial evidence which cooberates Petitioner's confession. Thus the court finds no basis for the Petitioner's argument.

[6]    First the Petitioner claims that the findings in a § 1983 action filed by his brother Juan cooberate his claim that he was beaten and abused by police before and during his interrogation. The court in that case found that Jose Luis Martinez, a Laredo

16

·· 000965

Ordinarily where new evidence is adduced after a conviction and sentence, a federal habeas court would hold an evidentiary hearing in order to ensure that the Petitioner was able to fully assert his constitutional rights. 28 U.S.C. § 2254(d)(3). Where, however, the failure to develop evidence was the result of inexcusable neglect by the Petitioner, the federal habeas court is not required to hold an evidentiary hearing. Streetman v. Lynaugh, 812 F.2d 950 (5th Cir. 1987). The Supreme Court defines inexcusable neglect in terms of the deliberate bypass standard set out in *Fay v. Noia*.[7] The Supreme Court explained this standard as follows in Townsend v. Sain, 372 U.S. 293, 317, 83 S.Ct. 745, 759 (1963):

> The standard of inexcusable default set down in *Fay v. Noia* adequately protects the legitimate state interest in orderly criminal procedure, for it does not sanction needless piecemeal presentation of constitutional claims in the form of deliberate by passing of state procedures. . . . 'The primary purpose of a habeas corpus proceeding is to make certain that a man is not unjustly imprisoned.

---

Police Officer, struck Juan "one or more times . . . [and] handcuffed Juan Jose Aranda tightly with his hands behind his back in an unduly severe fashion. . . ". (Petitioner's Ex. 15, p. 4). As a result the 1983 court awarded Juan $500.00 compensatory damages and $500.00 punitive damages. The Petitioner claims that the judgment illustrates the coercive atmosphere which influenced the Petitioner, who before being interrogated was taken to Juan and saw him swollen and bruised. In addition Petitioner has filed three affidavits from family members who claim to have observed bruises and swelling on the Petitioner and his brother, and who claim that they were intimidated by the police when they attempted to visit the brothers in the hospital. Affidavit of Amelia Lemanski (Petitioner's Ex. 20); Affidavit of Mario D. Aranda (Petitioner's Ex. 25); Affidavit of Andres Aranda (Petitioner's Ex. 19). Finally Petitioner claims that mug shots of Petitioner, were withheld from Petitioner by the State, and appeared only by mistake at Juan's trial.

[7]     372 U.S. 391, 83 S.Ct. 822 (1963).

000066

> And if for some justifiable reason he was previously
> unable to assert his rights or was unaware of the
> significance of relevant facts, it is neither necessary
> nor reasonable to deny him all opportunity of obtaining
> judicial relief'.

Id.

Thus evidence that was not presented at the trial due to "an intentional relinquishment or abandonment of a known right or privilege", Streetman v. Lynaugh, 812 F.2d at 959 (citing Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019 (1938)), may not be considered "new evidence" based on which a federal habeas court should hold an evidentiary hearing for purposes of § 2254 analysis.

In this case Petitioner has failed to articulate a reason for his failure to present the affidavits from his family members. Furthermore, as Respondent argues, the Petitioner's brother Juan informed the trial court at a pretrial suppression hearing that there were three witnesses who could describe his condition as a result of beatings from Laredo police officers. (JJA. Tr. vol. 1, pgs. 344-45). The Petitioner fails to indicate why he could not have used these witnesses.

In addition, the Petitioner fails to show why he could not have presented some of the evidence presented at his brother's § 1983 trial. There is nothing to indicate that such evidence was unavailable prior to the § 1983 action. For example, according to the record in Juan's § 1983 case, Evaristo Hinojosa who was one of the witnesses Juan mentioned to the trial judge, testified at Juan's § 1983 trial. Thus Petitioner had notice of at least one witness shortly after Juan testified at his suppression hearing.

18

· 000987

The Court concludes that the Petitioner's failure to develop evidence, upon which Juan's § 1983 judgment was based, has not been sufficiently explained and as such appears intentional. Thus the Court finds the Petitioner's failure to develop such evidence is a product of inexcusable neglect, and therefore the Petitioner is not entitled to an evidentiary hearing before this court.

Finally, the Petitioner contends that the state may have mug shots depicting the Petitioner's bruises and physical injuries. The Petitioner, however, has presented no evidence that would convince this court that such photographs actually exist. With regards to the mug shots, the Court finds that the Petitioner has failed to present any new evidence which supports holding an evidentiary hearing.

### B.  Voluntariness

In this case, the voluntariness of Petitioner's confession presents a subsidiary fact question. See Brown v. Allen, 344 U.S. 443, 506, 73 S.Ct. 397, 446 (1953). Subsidiary fact questions, such as whether the police engaged in coercive tactics, or whether a defendant understood the *Miranda* warnings, are entitled to § 2254(d) presumption of correctness. "The law is [] clear that state-court findings on such matters are conclusive on the habeas court if fairly supported in the record and if the other circumstances enumerated in § 2254(d) are inapplicable. Id. at 112, 450-51. The ultimate question, however, of whether the challenged confession was obtained in compliance with Constitutional guarantees, is a matter for independent federal determination.

• 000908

Miller v. Fenton, 474 U.S. at 112, 106 S.Ct. at 450-51.

With these principles in mind the Court concludes that the state trial[8] and appellate courts' findings[9] are correct and support a finding that Petitioner's confession was properly admitted.[10]

---

[8]    Originally the trial court did not make written Findings of Fact and Conclusions of Law.  For that reason Petitioner's first appeal was abated.  Upon the trial court making such findings in writing, the appeal was reinstated. (Tr. Supp. 1)

[9]    The Petitioner also seeks habeas relief for the trial court's failure to find his confession voluntary based on a preponderance of the evidence.  See Lego v. Twomey, 404 U.S. 477, 92 S.Ct. 619 (1972).  The trial court, however, made its finding beyond a reasonable doubt, thus satisfying the standard set out in Lego v. Twomey.

[10]    According to the state trial and appellate courts' findings of fact, the Petitioner was apprehended near the scene of the murder in the early morning hours of July 31, 1976.  The Petitioner was taken to Mercy Hospital in Laredo for treatment of gun shot wounds and in the late afternoon or evening of August 1, 1976 he was incarcerated in the Webb County Jail.  After receiving his required warnings, the Petitioner was interrogated.  During the interrogation the Petitioner was allowed to confer with his brother Juan outside the presence of witnesses and he eventually gave a statement in his own handwriting.  The trial court found beyond a reasonable doubt that in addition to receiving the required warnings there were "never any promises made to either of said defendants, or coercion use, nor was there any physical abuse in any manner to induce either defendant to make his respective written statement". (Tr. Supp. 1).  The court also expressly found that the Petitioner was not subjected to any undue interrogation before his statement was made and that he never requested to stop giving his statement or to consult with an attorney.  In paragraphs twenty-seven and twenty-eight of his petition the Petitioner challenges the voluntariness of his confession claiming that the medication given him for his gun shot wounds left him "weak and disoriented", that he was not able to stand on his own, and that he left the hospital in a wheelchair.  Although the state trial court did not mention these claims directly, it did find that the satement was given voluntarily and was not the result of any cumpulsion or persuasion, and thus the state appellate court found,

> The difficulty with appellant's approach is that there is no evidence to show that appellant was under the influence of

20

000369

## C. Appearance Before the Magistrate

Next the Petitioner argues that he is due relief on the grounds that his confession was taken during a period of illegal delay in taking him before a magistrate. He alleges that as a result he was not informed of the capital murder charge against him until after his interrogation. In De La Rosa v. State of Texas, 743 F.2d 299 (5th Cir. 1984), *cert. denied*, 470 U.S. 1065, 105 S.Ct. 1781 (1985), a habeas corpus petitioner argued that his confession was inadmissable due to the four and a half hour delay between his arrest and appearance before the magistrate. The petitioner in *De La Rosa* was arrested at approximately 5:30 in the evening. At 6:45 p.m. the petitioner began to confess to one shooting, and at 8:00 he began to confess to another. Shortly after 10:00 p.m. the petitioner finished his second statement and was taken before a magistrate at 10:30 p.m.. The petitioner conceded that a magistrate was not available until 8:00 p.m., but argued that the investigating officer should have stopped taking the confessions until after the petitioner had appeared before a magistrate. The Fifth Circuit held:

> medication to the extent he could not clearly think or voluntarily give a confession. His testimony did not establish that. The State showed he walked to the interrogation room, appeared to be mentally alert, understood the warnings, conferred with his brother, etc., before giving the confession.

(Tr. Supp. 2, p. 6). Based on these findings the state appellate court found no error in the trial court's decision to admit the confession into evidence. (Tr. Supp. 2).

' 000970

> [e]ven assuming that the time gap between the arrest
> and initial appearance was unreasonable, the claim does
> not rise to constitutional significance. The Supreme
> Court has long held that Rule 5(a), Fed.R.Crim.P., is not
> imposed on the states by the Fourteenth Amendment.
> (citations omitted).
>
> As a constitutional matter, we must determine only
> whether any delay was causally related to the giving of
> the confession. . . . In our reading of the record we
> find nothing to indicate that De La Rosa's confession
> was anything other than the product of his free and
> voluntary choice.

De La Rosa, 743 F.2d at 303.

In the instant case the trial court found that the Petitioner
confessed of his own free will without any compulsion or
persuasion. The state appellate court found no error in the trial
court's ruling. There is nothing in the record nor does the
Petitioner allege anything to indicate that the delay in bringing
him before a magistrate was causally related to his giving a
confession. Based on the record in the instant case, the Court
concludes that there is nothing to indicate that the Petitioner's
confession was the result of anything other than his own free will.
See De La Rosa v. State of Texas, 743 F.2d 299. Thus the
Petitioner's claim does not rise to the level of constitutional
error, and habeas relief for the delay must be denied.

### D. Right to Counsel

While the Petition fails to state directly that Petitioner
believes his Fifth and Sixth Amendment rights to counsel were
violated, it appears that the Petitioner also claims, as he did on
direct appeal, that his confession was improperly admitted because
it was taken without allowing the Petitioner to exercise his right

000371

to counsel.

A defendant's Sixth Amendment right to counsel attaches when adversarial proceedings against the accused commence. Brewer v. Williams, 430 U.S. 387, 97 S.Ct. 1232 (1977), Felder v. McCotter, 765 F.2d 1245 (5th Cir. 1985) *cert. denied*, 475 U.S. 1111, 106 S.Ct. 1523 (1986). Courts should look to state law in order to determine when adversarial proceedings have commenced. Felder v. McCotter, 765 F.2d at 1247 (citing Moore v. Illinois, 434 U.S. 220, 227, 98 S.Ct. 458, 464 (1977)); Kirby v. Illinois. 406 U.S. 682, 688, 92 S.Ct. 1877, 1881 (1972). In Texas, the filing of an affidavit and criminal complaint constitutes the beginning of judicial proceedings. Felder v. McCotter, 765 F.2d at 1247-48.

The Petitioner has failed to allege nor is there any evidence that an affidavit or criminal complaint had been filed with the appropriate authorities prior to Petitioner's interrogation at the Webb County Jail. The Court concludes that at the interrogation the Petitioner was not yet entitled to an attorney under the Sixth Amendment, and therefore the Petitioner has failed to state a Sixth Amendment right to counsel claim.

With regards to the Petitioner's Fifth Amendment claim, it is well settled that the right to counsel attaches at the beginning of custodial interrogation, Miranda v. Arizona, 384 U.S. 436, 444-45, 86 S.Ct. 1602, 1612 (1966), but can be waived if such waiver is voluntarily and intelligently made. Moran v. Burbine, 475 U.S. 412, 421, 106 S.Ct. 1135, 1141 (1986); North Carolina v. Butler, 441 U.S. 369, 99 S.Ct. 1755 (1979). As stated, the record

23

000972

indicates that Petitioner's statement was voluntarily made, and that at no time after receiving his *Miranda* warnings did Petitioner request an attorney. (Tr. Supp. 1, and Supp. 2). The Texas Court of Criminal Appeals stated "[t]he appellant contended he asked for 'my lawyer' four times. The fact that the appellant ever asked for a lawyer at any time was denied by the district attorney, the deputy sheriff and a police officer who was present. The trial court found that appellant did not ask for a lawyer. . . . We find no error in the court's admission of the confession into evidence". (Tr. Supp. 2).

Under the § 2254(d) presumption of correctness, this Court accepts the fact findings of the state courts and in reliance on them, finds that the Petitioner waived his Fifth Amendment right to counsel.[11] Thus, the Petitioner has failed to state a claim for relief with regards to his Fifth Amendment right to counsel.

> Claim Three: Juan Aranda's uncounseled, custodial "confession" was improperly admitted.

The Petitioner contends that his brother Juan's confession, which was introduced for impeachment purposes at the Petitioner's trial, was coerced and as such should not have been admitted into evidence. As stated, the § 2254(d) presumption of correctness applies to fact questions regarding the voluntariness of a confession. In this case, the Court relies on the state trial and appellate courts fact findings as to the voluntariness of Juan's

---

[11]   Note, Petitioner makes no claim that his confession was not intelligently made, or that he did not understand the Miranda warnings when given.

· 000973

confession and finds that the Petitioner has presented no "new evidence"[12] contrary to that considered by the state courts which warrants an evidentiary hearing in this Court.

Based on the state courts' fact findings this court finds that Juan's confession was voluntary.

Next the Petitioner claims that the trial court judge failed to limit the admission of Juan's confession to impeachment purposes only. The Petitioner has presented no authority for his position and there is no indication in the record that Petitioner requested such an instruction. Even if the Court were to find that the admission of Juan's confession required an instruction from the trial judge limiting its purpose to impeachment only[13] the trial courts' failure to give such an instruction does not rise to the level of Constitutional error required for habeas relief. Henderson v. Kibbe, 431 U.S. 117, 154-56, 97 S.Ct. 1730, 1736-37 (1977); Bailey v. Procunier, 744 F.2d 1166 (5th Cir. 1984); see also Bridge v. Lynaugh, 838 F.2d 770, 772 (5th Cir. 1988) ("An evidentiary error in a state trial justifies federal habeas corpus relief only if the error is 'so extreme that it constitutes a

---

[12]    In Petitioner's third claim for relief he argues that his brother's judgment in the § 1983 action and the affidavits from family members make up new evidence based upon which this Court should hold an evidentiary hearing. The Court has addressed this argument with regards to the Petitioner's confession, and finds that such evidence is not new, but was not presented at trial due to the Petitioner's inexcusable neglect. See discussion, *supra*, pgs. 16-19.

[13]    Petitioner relies on United States v. Palacios, 556 F.2d 1359 (5th Cir. 1977) (prior unsworn inconsistent statements are hearsay and under F.R.E. 607 should not be used as evidence of guilt).

• 000374

denial of fundamental fairness under the Due Process Clause'") (citation omitted).

### Claim Four: Petitioner was improperly refused a full and fair hearing on his motion to exclude evidence illegally seized pursuant to an unconstitutional stop and seizure.

Petitioner's fourth ground for relief is based on the trial court's alleged failure to provide the Petitioner a full and fair evidentiary hearing with regards to Petitioner's claim that the evidence seized should have been suppressed due to the unlawful stop made by Officers Viera and Albidrez.  The Petitioner alleges that the failure to hold a hearing deprived him of due process, a fair trial, and a reliable determination that death is the appropriate penalty.  Because this claim arises out of the Fourth Amendment exclusionary rule, this court's power to grant habeas relief depends on whether Petitioner was afforded a full and fair opportunity to present this a Fourth Amendment claim to the state courts.  Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037 (1976).

> [W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.  In this context the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force.

428 U.S. at 494-95, 96 S.Ct. at 3052-53 (footnotes omitted).

In this case the Petitioner filed a Motion to Suppress Evidence jointly with his brother Juan. (Tr. vol. 1, p.30).  The

● 000375

hearing with regards to this motion was held in the middle of Juan's trial. (JJA R. vol. 2, pgs. 463-71). Prior to the hearing, but during the trial, the court had heard testimony from Officer Viera as to his observations and decision to stop the station wagon. After brief arguments from counsel, the trial court ruled that the marihuana, seized as a result of the stop, would be admitted and that the motion to suppress was denied. (JJA R. vol. 2, p. 469).

At Petitioner's trial, counsel for the Petitioner made an oral motion to suppress the marihuana, in the form of an objection to its being admitted, and requested an immediate ruling from the court. The trial court after having listened to Officer Viera's testimony about his reason for stopping the wagon, (R. vol. 8, pgs. 174-181)[14], overruled the objection and ordered the State to continue presenting its case. (R. vol. 9, pgs. 459-460). At that point, counsel for Petitioner made no attempt to present additional evidence or to schedule a hearing.

In the Fifth Circuit it is well settled that "an opportunity for full and fair litigation" is interpreted as being just that: an opportunity. "If the state provides the processes whereby a defendant can obtain full and fair litigation of a fourth amendment claim, *Stone v. Powell* bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes". Caver v. State of Alabama, 577 F.2d 1188, 1191-92 (5th Cir. 1978).

---

[14] Because the shooting occurred during the stop, this evidence was presented as part of the State's case in chief.

060376

"[F]ull and fair" consideration of a Fourth Amendment claim includes "at least one evidentiary hearing in a trial court and the availability of . . . full consideration by an appellate court when the facts are not in dispute". _Id_. at 1191 (citing _O'Berry v. Wainwright_, 546 F.2d 1204 (5th Cir. 1977)).

As stated, the Petitioner filed a joint motion to suppress with his brother Juan. That motion was ruled upon shortly after the Petitioner's trial was severed from his brother's. Prior to Petitioner's urging suppression in the form of an objection at his trial, the trial court had heard the direct and cross examination of Officer Viera. In overruling Petitioner's objection the trial court denied Petitioner's oral motion to suppress.

Finally, it should be noted that the Petitioner requested an immediate ruling on his objection, which indicates to this Court that he was satisfied with the presentation of evidence as to the motion to suppress.

With regards to the state appellate court, the Petitioner does not claim that he was denied an opportunity to raise his Fourth Amendment claim there.

Because Petitioner was given a full and fair opportunity to raise his Fourth Amendment claim before the state courts, this court must deny Petitioner's fourth ground for habeas corpus relief.

### Claim Five: Petitioner's trial was unreasonably and prejudicially delayed.

Petitioner's fifth ground for relief is based on the ten day

·' 000877

delay between his arrest and presentation before a magistrate,[15] the delay that occurred as a result of the mistrial due to pretrial publicity, the delay before his trial resulting from his case being severed from his brother Juan's, and the delay resulting from the change of venue.

## A. Appearance Before the Magistrate

As stated with regards to Petitioner's second claim, the Fifth Circuit has found that the time gap between an arrest and initial appearance before a magistrate does not rise to a level of constitutional significance and as such does not warrant habeas relief. De La Rosa v. State of Texas, 743 F.2d at 303, see also discussion *supra,* pgs. 20-22.

## B. Speedy Trial

Constitutional speedy trial claims are resolved according to the balancing test set forth in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182 (1972). The threshold consideration in the *Barker* test is whether the delay is of sufficient length to be deemed presumptively prejudicial, thus requiring analysis of the remaining *Barker* factors. Gray v. King, 724 F.2d 1199, 1202 (5th Cir. 1984) *cert. denied,* 469 U.S. 980, 105 S.Ct. 381 (1984); Arrant v. Wainwright, 468 F.2d 677 (5th Cir. 1972) *cert. denied*, 410 U.S. 947, 93 S.Ct. 1369 (1973) (a two year delay is presumptively prejudicial).

The permissible length of delay is dependant on the individual

---

[15]     Petitioner argues that the ten day delay between his arrest and appearance before a magistrate violated Tex. Code Crim. Proc. arts. 14.06 and 15.17 (Vernon's 1977 and 1991 supp.).

· 000978

characteristics of a case. Id. For example, in *Gray v. King*, the Fifth Circuit found that a ten month delay was not excessive where the defendant was accused of attempted murder, which carries a lengthy sentence, and where the conviction did not hinge on eye-witness testimony or similar proof. Gray v. King, 725 F.2d at 1202. Thus the manner of proof in that case was a factor, as was the seriousness of the crime. See Id.

Unlike the ten month delay in *Gray*, the delay in this case was two years and eight months. Although there is no danger in a capital case of holding a defendant prior to trial longer than he would be incarcerated if convicted, and although there was no dispute at trial that Petitioner was at the scene of the murder in the early morning hours of July 31st, this Court feels that a two year and eight month delay is clearly sufficient to require consideration of Petitioner's speedy trial claim. See Arrant v. Wainwright, 468 F.2d at 680.

(1) The Reason For the Delay

On November 22, 1976 the Petitioner filed a "Notice of Possible Conflict in Trial Settings", (Tr. vol. 1, p. 118), which the trial court treated as a motion for continuance and granted. (Tr. vol. 1, p. 118). On April 25, 1977 a joint motion to postpone the hearings on pretrial motions was granted, (Tr. vol. 1, p. 118) and on September 21, 1977 defense counsel requested additional time to prepare for the pretrial hearings. Finally the trial was set for July 17, 1978, (Tr. vol. 1, p.118). On September 13, 1978 the court convened for jury selection, however, at that time the

000979

Petitioner informed the court that he was ill. After concluding that Petitioner's pain would not enable him to stay in the court room, the court ordered Petitioner's case severed from his brother's. Juan was formally sentenced on December 5, 1978. (Tr. vol. 1, p. 123). On December 8, 1978 the state filed a motion to change the venue. The trial court granted said motion on January 19, 1979 and on March 26, 1979 *voir dire* commenced for the Petitioner's trial.

This Court recounts the foregoing to illustrate that other than the change of venue on January 19, 1979, the Petitioner either urged or joined in several motions which delayed the trial. As a result, the Petitioner's complaint should be considered only with regards to the nine week period between January 19th and March 26th, 1979, that is, the time for which the Petitioner was neither independently nor jointly responsible. <u>Davis v. Puckett</u>, 857 F.2d 1035, 1041 (5th Cir. 1988). It is well settled that where the defendant participated in the delay, he will not be allowed to complain. <u>Id</u>. at 1041; <u>Millard v. Lynaugh</u>, 810 F.2d 1403, 1406 (5th Cir. 1987) *cert. denied,* 484 U.S. 838, 108 S.Ct. 122 (1989).

(2) <u>Petitioner's Assertion of His Speedy Trial Rights</u>

It is clear from the record that Petitioner first asserted his Speedy Trial right at a March 12, 1979 pretrial hearing. (R. vol. 4, p. 84-86), two weeks before the start of the trial.

(3) <u>Prejudice</u>

In *Barker v. Wingo* the Supreme Court identified three interests which the speedy trial right protects: (1) to prevent

31

·ₜ 000980

oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused, and (3) to limit the possibility that the defense will be impaired. In this case the first *Barker* interest is moot because Petitioner was being held on rape charges during the majority of the time he was held on capital murder charges. Second, the Petitioner has not shown that his anxiety and concern was in any way heightened due to the lengthy delay. Finally, the Petitioner argues that the delay allowed the change of venue to Victoria, and indirectly allowed the selection of a jury that convicted the Petitioner to death.

Clearly this was not the type of prejudice the *Barker* Court meant to prevent. The speedy trial right protects a defendant from prejudice because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Barker v. Wingo, 407 U.S. at 532, 92 S.Ct. at 2193. The Petitioner's attempt to fashion his discontent with the Victoria jury into some form of speedy trial violation does not warrant a finding of prejudice from this Court. For that reason this Court finds that the Petitioner has failed to show any prejudice with regards to the delay.

As stated, the two years and almost six months of the delay in the Petitioner's case was due to either his own or joint motions. The Petitioner failed to assert his right until two weeks prior to trial, and the Petitioner has failed to show that he was

000981

in any way prejudiced by the delay. On these grounds the Court denies the Petitioners fifth claim for relief.

### Claim Six: The trial court improperly and unnecessarily declared a mistrial and dismissed already qualified jurors.

The Petitioner's sixth claim for relief is essentially a re-wording of his argument for relief on speedy trial grounds. The argument is as follows: if a mistrial were not declared, then the delay during which the venue was changed would not have occurred, and if the venue had been in Webb County as opposed to Victoria County then the jury would have been drawn from the county in which the crime occurred, and if the jury had been selected from Webb County, the Petitioner's due process rights would not have been violated and there would be no danger that the jury's sentencing determination was unreliable. Note, the Petitioner's challenge is not to the trial court's decision to declare a mistrial, but to the delay that occurred as a result of that decision.

> The delay caused [by the mistrial] arguably prevented Petitioner from being tried in the venue where the crime occurred, denied him due process and a fair trial before a jury fairly drawn from a representative of the community, and undermined the reliability of the ultimate determination that death is the appropriate punishment.

(Petition, para. 67).

This Court addressed the delay issue in the Petitioner's fifth claim for relief. The Court finds as it did previously that the Petitioner has failed to show that prejudice, if any, was prejudice caused by the mistrial and subsequent delay. In addition, the Petitioner has failed to show that the delay in any way infringed

33

• 000982

on his Fifth Amendment right to due process, his Sixth Amendment right to a fair trial or his Eighth Amendment right to a reliable sentencing determination. Finally the Court feels the Petitioner's double jeopardy argument raised briefly in Petitioner's Opposition to Respondent's Motion for Summary Judgment is without merit. For these reasons the Petitioner's sixth claim for relief is denied.

### Claim Seven: Trial Judge Kelly improperly refused to recuse himself from presiding at Petitioner's trial.

The Petitioner argues that Judge Kelly's prior relationship with the prosecutor's father, and his prior rulings in Juan Aranda's trial, evidence a sufficient risk that Judge Kelly was unable to preside in the Petitioner's case with total objectivity. Given the alleged risk, the Petitioner argues that Judge Kelly's refusal to recuse himself violated the Petitioner's rights to due process, a fair trial, effective assistance of counsel and a fair sentencing proceeding.

Generally questions of judicial qualification do not rise to the level of constitutional validity. Aetna Life Insurance v. Lavoie, 475 U.S. 813, 106 S.Ct. 1580 (1986); FTC v. Cement Institute, 333 U.S. 683, 68 S.Ct. 793 (1948); compare Tumey v. Ohio, 273 U.S. 510, 47 S.Ct. 437 (1927) (defendant convicted, fined, and committed to jail by judge who had direct, personal, and pecuniary interest in conviction, was denied right to due process).

34

In *Aetna Life Insurance v. Lavoie*[16], the Supreme Court held that while there was a recent trend among the states towards adopting statutes that permit judicial disqualification for bias or prejudice, judicial prejudice rises to the level of a constitutional violation in only the most extreme cases.

In the instant case the Petitioner has done nothing more than allege bias or prejudice on the part Judge Kelly. The Petitioner has made no specific showing of bias nor will the law "suppose a possibility of bias or favour in a judge, who is already sworn to administer impartial justice, and whose authority greatly depends upon that presumption and idea". <u>Aetna Life Ins. Co. v. Lavoie</u>, 475 U.S. at 820, 106 S.Ct. at 1585 (quoting 3 W. Blackstone, Commentaries *361). Furthermore even if the Petitioner could make a showing, the case law dictates that a trial judge's refusal to recuse himself does not rise to the level of a due process violation.

Finally, with regards to the Petitioner's claims that Judge Kelly's failure to recuse himself violated his rights to a fair trial, effective assistance of counsel, and a fair sentencing, the

---

[16] In *Lavoie*, Alabama Supreme Court Justice Embry authored a *per curiam* opinion affirming a jury award of $3.5 million for a bad faith refusal to pay claim against an insurance company. Prior to the Alabama Supreme Court's decision to affirm their jury award, however, the appellants learned of Justice Embry's participation in a bad faith class action against Blue Shield and challenged Justice Embry's participation in appellant's case. The Alabama Supreme Court unanimously denied the appellant's recusal motions and the appellant filed an appeal with the United States Supreme Court. The Supreme Court found that Justice Embry's general frustration with insurance companies was insufficient to warrant a finding that his participation in the appellant's case violated appellant's due process rights.

' 000984

Petitioner has failed to set out how these rights were violated and this Court will not spend time analyzing conclusory allegations.

For these reasons the Petitioner's seventh claim for relief is denied.

<u>Claim Eight: The trial court improperly changed venue on its own motion, and over Petitioner's objection, from Webb County to a demographically different venue in Victoria County</u>.

The Petitioner claims that Judge Garcia's[17] decision to change venue to Victoria County was an abuse of discretion. In addition the Petitioner claims that the change violated his Sixth Amendment rights to jury made up of a cross section of the community, and to a jury from the district in which the crime was committed. Finally the Petitioner claims that the change in venue to a county where there are about one third as many citizens of Hispanic origin, and that is 178 miles from the city in which the crime was committed, violated his right to due process.

If a trial court is satisfied that in the district where the trial is pending prejudice is so great against a defendant that he cannot obtain a fair trial, the trial court may order a change of venue. That decision is committed to the sound discretion of a

---

[17] Judge Ruben Garcia from the 49th Judicial District, Webb County, Texas, sat in for Judge Kelly on the States's motion for change of venue. The hearing was held on January 19, 1979. Judge Garcia found that although the State failed to satisfy the requirements of Tex. Code Crim. Proc., art. 31.02, the change of venue provision, there was sufficient evidence to show that neither the State nor the Petitioner could get a fair and impartial trial in Webb or the surrounding counties.

36

·† 000985

trial court.  <u>United States v. Harrelson</u>, 754 F.2d 1153, 1159 (5th Cir. 1985); <u>United States v. Nix</u>, 465 F.2d 90, 95-96 (1972) *cert. denied*, 409 U.S. 1013, 93 S.Ct. 455 (1972).

In this case the Petitioner does not challenge the venue change due to pretrial publicity, but rather the change to Victoria County itself.  The trail court found, however, that due to the extent of pretrial publicity, the Petitioner could not get a fair trial in the 49th district, including Webb, Dimmit, and Zapata counties, or in any of the surrounding districts. (R. vol. 3, pgs. 161-62).  In <u>Prejean v. Smith</u>, 889 F.2d 1391 (5th Cir. 1989) *cert. denied*, _____ U.S. _____, 110 S.Ct. 1836 (1990), the Fifth Circuit found that the transfer of a case from one district to another with history of racism and discrimination, was not arbitrary where the trial court stated that it wanted to move the trial as far away from the scene of the crime as possible and that it tried another location, but that location was unavailable due to construction. Based on the Fifth Circuit's reluctance to find the trial court's decision in *Prejean v. Smith* arbitrary, this Court finds that the trial court's decision was not arbitrary and there is no indication that the trial judge abused his discretion by changing the venue to Victoria county.

Furthermore, in the Fifth Circuit, any constitutional right to be tried in the county where the crime was committed does not apply to state prosecutions. <u>Cook v. Morrill</u>, 783 F.2d 593 (5th Cir. 1986); <u>Martin v. Beto</u>, 397 F.2d 741 (5th Cir. 1968) *cert. denied,* 394 U.S. 906, 89 S.Ct. 1008 (1969); <u>Zicarelli v. Dietz</u>, 633

·ᵼ 000986

F.2d 312 (5th Cir. 1980) *cert. denied*, 449 U.S. 868, 101 S.Ct. 868 (1981).

With *Martin v. Beto* in mind, the Petitioner, claims that he was deprived of due process when a jury was selected from Victoria County, which he alleges has fewer citizens of Hispanic descent and fewer citizens who live below the poverty level, than does Webb County. According to the Petitioner, the differences in the two counties are such that the change in venue deprived him of the fundamental fairness essential to a criminal trial. (Petition, para. 92).

The Petitioner relies on *Zicarelli v. Dietz*[18]. In that case, however, the Fifth Circuit briefly addressed a defendant's Sixth Amendment right to have a jury from a district previously ascertained by law, and stated that (1) Zicarelli based his claim on other grounds, and (2) that the right did not extend to state prosecutions. Zicarelli v. Dietz, 633 F.2d at 326.

Because the Petitioner has failed to show that he was deprived of his right to a fair trial in Victoria county, this Court finds

_____

[18]    The Petitioner relies on the following language from *Zicarelli v. Dietz*:

> Removal of a defendant from his or her home county where the offense was committed, without good reason, to be tried before a jury drawn from a far distance from home, without having prior notice of the place of trial for the offense previously ascertained by law might constitute such an arbitrary act that it violates due process as protected by the Fourteenth Amendment.

633 F.2d at 326 (5th Cir. 1980).

38

ι. 000987

that the venue change did not violate his right to due process. In addition, this Court finds that the trial court's decision to change venue was not arbitrary, and as stated any constitutional right to a jury from the district in which the crime was committed does not extend to state prosecutions. For these reasons the Petitioner's eighth claim for relief is denied.

<u>Claim Nine: The jury selection process in Victoria County systematically excluded and discriminated against Hispanics and deprived Petitioner of a jury fairly representative of the community</u>.

The Petitioner's ninth claim for relief challenges the jury selection system in Victoria County. According to the Petitioner, Victoria County relied on its voter registration lists as the sole source for jury wheels at the time of the Petitioner's trial. An affidavit filed by the Petitioner indicates that in 1980 25.8% of the eligible voters in Victoria County were Hispanic. Of that group 20.5% registered to vote in 1980 and 18.0% registered to vote in 1979.

Even if the court assumes that from 1979 to 1980 the number of eligible voters did not change, the Petitioner's affidavit indicates that the variance between the registered Hispanics and those eligible to register amounted to a drop of approximately 7.8% of Hispanics potentially available for jury selection. (Petitioner's Ex. 16). Based on these numbers the Petitioner argues that Hispanics were systematically excluded from the jury pool and that such exclusion violated his rights to due process, a fair trial by a jury of his peers, and a reliable determination

39

that death is the appropriate punishment.

In Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692 (1975) the Supreme Court held that the systematic exclusion of a distinctive group in the community from jury pools, denies a criminal defendant his right under the Sixth and Fourteenth Amendments to a petit jury selected from a fair cross section of the community.

To establish a *prima facie* violation of the fair cross section requirement the petitioner must show,

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

Duren v. Missouri, 439 U.S. 355, 362, 99 S.Ct. 664, 668 (1979). If the Petitioner fails to demonstrate any one of these elements, he has failed to establish a constitutional violation. Timmel v. Phillips, 799 F.2d 1083 (5th Cir. 1986).

With respect to the first prong of the *Duren* test, this Court assumes and the Respondent does not dispute, that Hispanics are a distinctive group in Victoria County. That is, if Hispanics were systematically eliminated from jury panels in Victoria County the Sixth Amendment's fair cross section requirement could not be satisfied for any defendant tried there. See Taylor v. Louisiana, 419 at 531, 95 S.Ct. at 698. The second prong of the *Duren* test requires a showing of the percentage of the community made up of the group alleged to be underrepresented and a showing that the group was not only underrepresented on the Petitioner's jury

40

venire, but that this was the general practice on other venires. <u>Timmel v. Phillips</u>, 799 F.2d at 1086 (explaining <u>Duren v. Missouri</u>, 439 U.S. 355, 99 S.Ct. 664 (1979)).

In this case the Petitioner has filed one affidavit indicating a drop of about 7.8% of eligible Hispanics in the total jury pool is a result of the voter registration rolls being used. Other than this affidavit, the Petitioner has offered no other proof of the percentage of Hispanics on his jury venire. Furthermore, the Petitioner has failed to demonstrate that Hispanics were underrepresented generally in Victoria County jury pools. For these reasons the Court concludes that the Petitioner has failed to satisfy the second prong of the *Duren* test and has failed to demonstrate a *prima facie* violation of his Sixth Amendment right to a jury selected from a fair cross section of the community. Because the Petitioner has failed to satisfy the second prong of the *Duren* test, the court need not address the third.

The Petitioner's due process and Eighth Amendment claims are not clear to this Court. Given that the Petitioner has failed to show a violation of his right to a jury selected from a fair cross section of the community, however, this Court finds that the Petitioner could not show that the jury selected rendered his trial fundamentally unfair.

For the reasons stated the court denies the Petitioner's ninth claim for relief.

<u>Claim Ten: Venirepersons Clay, Petty, Turner, House and Lemke were improperly excused for cause when they voiced</u>

41

r 000990

<u>general scruples against the death penalty</u>.

In his tenth claim the Petitioner challenges the trial court's decision to excuse the named jurors based on their beliefs that they could not impose the death penalty under any circumstances. See <u>Witherspoon v. Illinois</u>, 391 U.S. 510, 88 S.Ct. 1770 (1968); <u>see also</u> <u>Wainwright v. Witt</u>, 469 U.S. 412, 419-26 (1985) (clarification of *Witherspoon* standard for determining when a prospective juror may be excluded for cause because of his or her views on capital punishment). The Petitioner appears to rely on the Supreme Court's statement in <u>Adams v. Texas</u>, 448 U.S. 38, 100 S.Ct. 2521 (1980), that,

> [I]t is entirely possible that a person who has a 'fixed opinion against' or who does not 'believe in' capital punishment might nevertheless be perfectly able as a juror to abide by existing law -- to follow conscientiously the instructions of a trial judge and to consider fairly the imposition of the death sentence in a particular case.

<u>Id</u>. at 44-45, 2526 (citing <u>Boulden v. Holman</u>, 394 U.S. 478, 483-484, 89 S.Ct. 1138, 1141 (1969)).

Whether a juror should be excused for cause based on his or her inability to follow the trial judge's instructions is a question to be answered primarily by the trial judge. "[D]eterminations of juror bias depend in great degree on the trial judge's assessment of the potential juror's demeanor and credibility, and on his impressions about that venireman's state of mind". <u>Wicker v. McCotter</u>, 783 F.2d 487 (5th Cir. 1986) *cert.* *denied*, 478 U.S. 1010, 106 S.Ct. 3310 (1986). The trial judge must consider "whether the juror's views would 'prevent or substantially

42

impair the performance of his duties as a juror in accordance with his instructions and his oath'". _Wainwright v. Witt_, 469 U.S. at 424, 105 S.Ct. at 852 (1985) (quoting _Adams v. Texas_, 448 U.S. at 45, 100 S.Ct. at 2526).

The Supreme court in _Wainwright v. Witt_ also stated,

> What common sense should have realized experience has proved: many veniremen simply cannot be asked enough questions to reach the point where their bias has been made "unmistakably clear"; these veniremen may not know how they will react when faced with imposing the death sentence, or may be unable to articulate, or may wish to hide their true feelings. Despite this lack of clarity in the printed record, however, there will be situations where the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law. . . . this is why deference must be paid to the trial judge who sees and hears the juror.

_Wainwright v. Witt_, 469 U.S. at 424-426, 105 S.Ct. at 852-53. The trial court's determination, therefore, is accorded a presumption of correctness as set out in § 2254(d).

In this case the Court finds support in the record for the trial court's decisions. (R. vol. 6 pp. 469-470, 473-475; vol. 6 pp. 695-98; vol. 7, pp. 844-49; vol. 7, pp. 985-88; vol. 7, pp. 1005-1009). Therefore there is no need for an evidentiary hearing and the Petitioner has alleged no basis for disregarding the presumption of correctness set out in § 2254(d).

Because the Court finds that the record fully supports the exclusion of the named venirepersons, the Petitioner's tenth claim for relief is denied.

Claim Eleven:  Jurors were improperly administered oath that prevented them from considering the potential

43

000892

<u>penalty when deciding issues of fact or otherwise</u>
<u>deliberating on their answers to the statutory sentencing</u>
<u>questions</u>.

Based on *Adams v. Texas*, the Petitioner contends that the trial court improperly administered an "oath" required by §12.31 of Texas Penal Code[19]. The Petitioner's reliance on *Adams v. Texas*, 448 U.S. 38, 100 S.Ct. 2521 (1980) is misplaced. In *Adams* the Supreme Court held that the State of Texas could not use § 12.31 in addition to *Witherspoon* as separate and independent basis for excluding jurors. <u>Adams v. Texas</u> 448 U.S. at 47, 100 S.Ct. at 2527. That is the Court found that as applied in *Adams* the touchstone of the §12.31(b) oath was:

> whether the fact that the imposition of the death penalty
> would follow automatically from affirmative answers to
> the questions would have any effect at all on the jurors'
> performance of their duties. Such a test could, and did,
> exclude jurors who stated that they would be "affected"
> by the possibility of the death penalty, but who
> apparently meant only that the potentially lethal
> consequences of their decision would invest their
> deliberations with greater seriousness and gravity or
> would involve them emotionally. Others were excluded
> only because they were unable positively to state whether
> or not their deliberations would in any way be
> "affected". But neither nervousness, emotional
> involvement, nor inability to deny or confirm any effect
> whatsoever is equivalent to an unwillingness or an
> inability on the part of the jurors to follow the court's
> instructions and obey their oaths, regardless of their
> feelings about the death penalty. The grounds for
> excluding these jurors were consequently insufficient

---

[19]     § 12.31(b) states,

Prospective jurors shall be informed that a sentence of life imprisonment or death is mandatory on conviction of a capital felony. A prospective juror shall be disqualified from serving as a juror unless he states under oath that the mandatory penalty of death or imprisonment for life will not affect his deliberations on any issue of fact.

44

under the Sixth and Fourteenth Amendments. Id. at 2528-29.

In this case the Petitioner does not allege that any of the potential jurors were improperly excluded under the guise of §12.31, but only that they were improperly administered the oath. Without showing that § 12.31 was used to exclude potential jurors, the Petitioner cannot make a valid claim based on *Adams v. Texas*. Thus his eleventh claim for relief is denied to the extent that it is based on an violation of his right to a fundamentally fair trial.

In addition, the court may find that the administration of § 12.31 violates due process only where the petitioner shows that the jury instruction at issue, by itself, so infected the entire trial as to render it fundamentally unfair. Cupp v. McNaughten, 414 U.S. 141, 146, 94 S.Ct. 396, 400. In this case the Petitioner has failed to indicate how the application of the statute rendered his entire trial unfair. For that reason the Petitioner's eleventh claim for relief, to the extent that it is based on a denial of due process, is denied.


Claim Twelve:  The trial court improperly refused to excuse for cause a juror who admitted bias against a defendant who exercised his Fifth Amendment right to remain silent.

The Petitioner challenges the trial court's refusal to remove venireperson Donna Bull, after the Petitioner allegedly challenged her for cause. According to the record Ms. Bull indicated that she would be biased against a defendant who did not take the witness

· 000394

stand. (R. vol. 6 pgs. 529-30).

Immediately after Ms. Bull's statements, the trial court and defense counsel, Mr. Dowling, had the following exchange:

THE COURT:     Well, we appreciate your honesty, and do you gentlemen have any questions?

MR. DOWLING:   Your Honor, since my client is going to take the witness stand, certainly there's no problem with us, and if she wants to be subjected to that sort of --

THE COURT:     Counsel, I call your attention to the fact that she has stated that, and you may, you know, in your strategy change your mind, that's the only reason I had. The Court is willing to go ahead.

MR. DOWLING:   I am perfectly happy, and I am sure that the woman would follow the instructions of the Court, and the instructions of the Court would so charge her that she is not to do that.

THE COURT:     All right. Okay, then we will go forward on some more questions then.
               . . .

(R. vol. 6, pgs. 529-30).

Ms. Bull's reservations about a defendant who did not take the witness stand were never raised again and nothing in the record indicates that defense counsel ever challenged her for cause. (R. vol. 6 pgs. 523-48). Thus, there is no factual basis for the Petitioner's claim. For that reason the court denies the Petitioner's twelfth claim for relief.

<u>Claim Thirteen:   The state withheld and suppressed material facts and witnesses.</u>

46

The Petitioner claims that the State's refusal to permit the removal of a bullet lodged in the Petitioner's hand deprived the Petitioner of evidence that would have created reasonable doubt in the jurors minds as to the location of the parties during the shooting. In addition, the Petitioner contends that the State withheld his original statement, and introduced a copy at the probable cause hearing. It is also the Petitioner's belief that the State withheld evidence regarding Officer Viera's record of police disciplinary actions, which if disclosed could have been used to impeach Officer Viera, and that the State withheld mug shots which would have shown that the Petitioner was beaten. Furthermore, the Petitioner claims that the State was aided in its suppression by the trial courts failure to timely grant the Petitioner's motion to compel. The Petitioner claims that when the trial court did rule on the motion in February 1979, it backdated its order to July 1978.

Finally, the Petitioner makes the following "may have" claims: the State, on information and belief, "may have," (1) withheld evidence showing that the gun introduced at trial as the one Petitioner used to kill Officer Albidrez was not in the Petitioner's possession at the time of the shooting, (2) concealed ballistics information contrary to the theory that the Petitioner shot Officer Albidrez, (3) concealed evidence showing that the bullet extracted from Officer Albidrez's body could not have been fired from the Petitioner's gun, (4) concealed evidence that the police log book was altered, (5) concealed evidence that bullet

47

holes in the side of the station wagon were covered, and (6) intimidated witnesses who would have testified for the Petitioner. The Petitioner requests discovery in order to further develop these claims and contends that the improper withholding of evidence violated his rights to Fifth, Sixth, Eighth and Fourteenth Amendment protection.

The *Brady*[20] rule requires the prosecution to disclose any evidence which may be exculpatory or mitigatory, including impeachment evidence, to the defendant. <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S.Ct. 1194 (1963); <u>United States v. Agurs</u>, 427 U.S. 97, 106 S.Ct. 111 (1976); <u>United States v. Bagley</u>, 473 U.S. 667, 015 S.Ct. 3375 (1985). To establish a successful *Brady* claim, the Petitioner must show that (1) the prosecution suppressed evidence, (2) that was favorable to the Petitioner, and (3) that was material to either guilt or punishment. <u>Brady v. Maryland</u>, 373 U.S. at 87, 83 S.Ct. at 1196.

In support of this claim for relief the Petitioner makes reference to five instances where the state "may have" withheld exculpatory evidence. There is no indication in the record, however, that any of that evidence existed, or that any of the evidence the Petitioner claims was altered was changed in any way[21].

---

[20]     <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S.Ct. 1194 (1963).

[21]     The Petitioner argues that because the pictures of the station wagon introduced at trial did not show the bullet holes in the side of the vehicle, the pictures or the station wagon itself may have been altered to conceal the bullet holes. The record indicates, however, that the jury saw the station wagon itself, (R. vol. 9 p. 746), and that defense counsel relied on this during his closing argument. (R. vol. 11, p. 22).

48

' 000997

See Brogdon v. Blackburn, 790 F.2d 1164 (5th Cir. 1986).

In the Petitioner's sixth "may have" claim he states that the State may have intimidated witnesses who would have testified for him. Concealment of material witnesses ripens into constitutional error upon a showing that the witnesses testimony would have created a reasonable doubt of guilt that did not otherwise exist. Hernandez v. Estelle, 674 F.2d 313, 315 (5th Cir. 1981) relying on Lockett v. Blackburn, 571 F.2d 309 (5th Cir. 1978) cert. denied, 439 U.S. 873, 99 S.Ct. 207 (1978), Freeman v. Georgia, 599 F.2d 65 (5th Cir. 1980) cert. denied, 444 U.S. 1013, 100 S.Ct. 661 (1980).

In this case the Petitioner refers to the testimony of only one possible witness, and claims that witness would testify about a pistol whipping allegedly inflicted by Officer Viera. It is not clear from the Petition, however, who Officer Viera allegedly pistol whipped. Not only has the Petitioner failed to show the mere relevance of this testimony, he has left this Court without any basis on which to conclude that the testimony of any of his possible witnesses would have created a reasonable doubt as to his guilt or sentence.

The Petitioner also claims that the state withheld evidence that "may have" been used to impeach Officer Viera, including evidence that the Petitioner believes would show that Officer Viera was suspended by the Texas Civil Service Commission. Again, there is nothing in the record to indicate that such evidence exists nor that the State suppressed such evidence, nor that such evidence would have altered the jury's verdict or sentencing recommendation.

49

Furthermore, it is not clear to this Court why if the Petitioner suspected that Officer Viera had been suspended, he did not have this suspicion at the time of trial and why he did not ask the Texas Civil Service Commission for such information. *Brady* does not require the prosecution to disclose evidence that is fully available to the defendant upon exercise of reasonable diligence. United States v. Ramirez, 810 F.2d 1338, 1343 (5th Cir. 1987) *cert. denied*, 484 U.S. 844, 108 S.Ct. 136 (1987); Mattheson v. King, 751 F.2d 1432, 1444 (5th Cir. 1985) *cert. dismissed*, 475 U.S. 1138, 106 S.Ct. 1798 (1986).

Furthermore the rule in *United States v. Ramirez* is applicable to the Petitioner's claim that the state's failure to remove a bullet from his hand deprived him of material evidence. Physical evidence lodged in the Petitioner's own hand is clearly available to the Petitioner, and unless there is evidence that the State some how prevented the Petitioner from having the bullet removed, can in no way can be considered concealed or withheld by the State.

Similarly the mug shots, which the Petitioner argues would have shown evidence of beatings, cannot be considered concealed or withheld by the State. There is no indication that the Petitioner was unaware of the pictures being taken, or that anyone else was prevented from taking pictures of the Petitioner. It is not up to the state to decide what may help a defendant's case. The *Brady* rule requires the state to disclose evidence that would not otherwise be known by or available to a defendant. See Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194 (1963), United States v.

50

<u>Ramirez</u>, 810 F.2d 1338, 1343 (5th Cir. 1987), and <u>Mattheson v.</u> <u>King</u>, 751 F.2d 1432, 1444 (5th Cir. 1985). Because there is no indication in the record that the Petitioner was not aware that mug shots existed, and in fact the presumption would be that he was, this Court finds that the state was not required to produce them.

Finally, paragraph 129 of the Petition states "[t]he State withheld from Petitioner the original of his alleged 'confession' statement, a copy of which was introduced at the probable cause hearing, and at trial". Although a copy of the Petitioner's confession was entered in the record, (R. vol. 10 p. 1144), this Court finds no evidence to indicate that the original was not presented at the probable cause hearing or at the trial, or that the copy was altered, or that the use of a copy amounts to a *Brady* violation.

Because the Petitioner has failed to show that the state suppressed evidence, or that such evidence was material to the jury's finding or guilt or sentencing recommendation, this Court finds that the State complied with the *Brady* rule.

For this reason the Petitioner's thirteenth claim for relief is denied.

<u>Claim Fourteen: The trial court rulings prevented</u> <u>Petitioner from developing and introducing evidence</u> <u>consistent with his theory of defense</u>.

The Petitioner claims that two of the trial court's evidentiary rulings prevented him from developing impeachment evidence against Officer Viera. (See Petition paragraphs 140 and

51

141). It is well settled that a federal habeas court does not sit as a "super state supreme court" reviewing evidentiary rulings. Bailey v. Procunier, 744 F.2d 1166, 1168 (5th Cir. 1984). An evidentiary error justifies federal habeas relief only where the error relates to evidence that is "crucial, critical, or highly significant" in the context of the entire trial. Thomas v. Lynaugh, 812 F.2d 225, 230 (5th Cir. 1987) cert. denied, 484 U.S. 842, 108 S.Ct. 132 (1987).

In this case evidence of past disciplinary actions against Officer Viera would not have enlightened the jury as to the issue of the Petitioner's culpability.[22] In fact at best the evidence may have raised a question in the jurors' minds as to Officer Viera's temperament. See Bridge v. Lynaugh, 838 F.2d 770, 772 (5th Cir. 1988). Because such evidence is not crucial, critical or highly significant to this case this Court finds that the trial court's exclusion of the evidence does not warrant habeas corpus relief.

Next, the Petitioner claims that the trial court wrongfully denied him access to the Victoria County tax roles, and in doing so prevented the Petitioner from developing his constitutional challenge to the jury selection process. According to the record the Petitioner was not denied access to the tax roles. Instead the trial court refused to allow defense counsel to introduce the

---

[22]   In Texas the rules of evidence apply to the guilt/innocence as well as the sentencing phase of capital murder trial. Smith v. State, 676 S.W.2d 379, 390 (Tex.Crim. App. 1984) en banc, Porter v. State, 578 S.W.2d 742, 748 (Tex.Crim.App. 1979). Thus this court's ruling with regard to the trial court's evidentiary rulings applies to the jury's findings at both stages of the trial.

52

: 001001

Victoria voter registration records into the trial court record, because, as the trial court stated,

> . . . suppose that you come up with a round figure of 20,000 names on there. Names all the way from Gonzalez, Garcia, Rodriguez. That tells the Court nothing because the people -- and I know that they do have Spanish surnames and they're not of Spanish origin. I know that they have some Anglo surnames and they are of Spanish origin. So it doesn't tell us anything.

(R. vol. 4, p. 98).

Because the Petitioner was not denied access to the Victoria voter registration records this Court finds no constitutional harm and denies the Petitioner's claim for relief on these grounds.

Finally, the Petitioner claims that the trial court's failure to grant continuances during the pre-trial period and just before the sentencing phase, prevented him from obtaining valuable witnesses. The decision to grant or deny a motion for continuance is a matter left totally to the trial court's discretion. Denial will warrant federal habeas relief only where the decision is shown to be so arbitrary as to deny the petitioner a fair trial. <u>Fitzpatrick v. Procunier</u>, 750 F.2d 473, 476 (5th Cir. 1985); <u>Hicks v. Wainwright</u>, 633 F.2d 1146, 1148 (5th Cir. 1981). The Petitioner has made no such showing.

Because the Petitioner has failed to show that the trial court's evidentiary rulings affected evidence that was crucial to the Petitioner's case, and because the Petitioner has failed to show that the trial court's rulings with regard to motions for continuance were arbitrary, his fourteenth claim for relief is denied.

' 001002

<u>Claim Fifteen:   Numerous improper and prejudicial</u>
<u>statements by the district attorney misled the jury and</u>
<u>interfered with its determination of Petitioner's guilt</u>
<u>or innocence; prevented the jury from weighing and giving</u>
<u>effect to mitigating evidence; and rendered impossible</u>
<u>an individualized and reliable determination that death</u>
<u>is the appropriate punishment.</u>

The Petitioner challenges several comments made by the prosecutor during closing arguments at the guilt-innocence phase of the Petitioner's trial and at the closing arguments of the sentencing phase of the Petitioner's trial.   The Petitioner contends that the statements at issue denied the Petitioner due process as guaranteed by the Constitution and prevented the jury from making a reliable determination that death is the appropriate punishment in his case.

Where a general due process challenge to the prosecutor's statements is made, the court must determine "whether the prosecutors comments 'so infected the trial with unfairness as to make the resulting conviction [or sentence] a denial of due process'".   <u>Rogers v. Lynaugh</u>, 848 F.2d 606, 608 (5th Cir. 1988) (citing <u>Darden v. Wainwright</u>, 477 U.S. 168, 181, 106 S.Ct. 2464, 2472 (1986)).   In other words, while a prosecutor's argument may deserve condemnation, if it did not render the trial unfair then there is no constitutional error.   <u>Darden v. Wainwright</u>, 477 U.S. at 179, 106 S.Ct. at 2471.   The Fifth Circuit uses the following test to determine whether a petitioner has alleged constitutional error: "whether there is a reasonable probability that the verdict might have been different had the trial been properly conducted".

54

Rogers v. Lynaugh, 848 F.2d at 609.

The Petitioner contends that the jury was prejudiced by the prosecutor's references to a sawed-off shot gun as a "people-killer", to Juan Aranda as being a convicted felon and knowing the penitentiary system, and to the possibility that the brothers would not have been caught and prosecuted had Juan killed Officer Viera. In addition the Petitioner contends that the prosecutor improperly stated that R. D. Richardson, a firearms expert, testified that the bullet removed from the victim could only have come from the Petitioner's weapon, and that the prosecutor made inflammatory sidebar comments.

When the prosecutor argued with regard to Mr. Richardson's testimony, the trial court stepped in, upon defense counsel's objection, and instructed the jurors to follow their recollections of the testimony (R. vol. 11, p. 14). In addition the prosecutor, at the beginning of his opening statement, told the jury "What I tell you here right now, what I said during the trial. . . is not evidence". (R. vol. 11, pgs. 3-4).

The evidence against the Petitioner in this case was strong. It is not likely that the arguments of counsel at closing swayed the jury from finding the Petitioner not guilty to finding him guilty. The record indicates that the statements in rebuttal, about Juan Aranda being a convicted felon, were likely responses to defense counsel's argument that Juan was a human being. (R. vol. 9 p. 24).

In addition, the Petitioner has failed to indicate what the

55

substance of the side-bar comments was and how it altered the jury's decision. Finally, the trial court specifically noted that it was of the opinion that the jury did not hear any of the side-bar comments and if they did they were to disregard them. The trial court then denied the Petitioner's motion for mistrial based on the jury's inability to hear the side-bar comments (R. vol. 10 pgs. 1087-88).

For these reasons this Court finds that there is no reasonable probability that the verdict would have been different had the jury not been exposed to the prosecutor's statements. Thus, the statements do not rise to the level of constitutional error and the Petitioner's fifteenth claim for relief, to the extent that it challenges statements made during closing arguments of the guilt-innocence phase, is denied.

The Petitioner makes the same allegation with regard to the Prosecutor's closing arguments during the sentencing phase. The Petitioner argues that the prosecutor instructed the jury not to consider mitigating evidence because a prior finding of guilt required an affirmative answer to the three special questions, that the prosecutor suggested that the Petitioner had the burden of proof at the sentencing phase, that the prosecutor improperly referred to victim impact and religious beliefs, that the prosecutor improperly suggested to the jury that an affirmative answer is required to question two where the jury finds that the defendant is a continuing threat to society, that the prosecutor improperly relied on emotional appeals and name-calling, and the

56

Petitioner states that the prosecutor repeatedly commented on the Petitioner's failure to testify.

The Petitioner contends that the prosecutor during closing arguments improperly referred to the Petitioner's decision not to testify. The Petitioner cites the following portion of the record in support of his argument:

> Sure [Arturo Aranda] was given pain killers, Demerol, at 1:00 o'clock in the afternoon, or earlier, according to this. But is there any testimony from his witness stand as to his condition? . . .

(Tr. vol. 11, p. 47). The record indicates, however that the procecutor said, "But is there any testimony from <u>this</u> witness stand as to his condition?" (emphasis added). The Court feels that the prosecutor's statment appears to be a reference to all of the testimony given during the Petitioner's trial, and not to the absence of the Petitioner's testimony and that such reference does not rise to the level of a constitutional violation. <u>See</u> <u>Milton v. Procunier</u>, 744 F.2d 1091 (5th Cir. 1984) (prosecutor's statement was neither "manifestly intended nor of such character that jury would naturally and necessarily take it to be comment on failure of the accussed to testify").

Furthermore, the prosecutor's biblical references were in response to those made by the defense (R. vol. 11, pgs. 64-65, 69-70), and the court reminded the jury that references to the victim during closing argument were only that, and not evidence (R. vol. 11, p. 79).

In addition, the Petitioner's suggestion that the prosecutor's use of "a continuing threat to society" as opposed to "a continuing

57

violent threat to society" was improper, was raised in his objection at closing (R. vol. 11 p. 75). In response the prosecutor stated to the jury "what are you willing to call it, threat to society?" (R. vol. 11 p. 75), and continued his argument as to the Petitioner's criminal history. Finally, despite his references to the record, the Petitioner has failed to refer this Court to anything that would indicate that the prosecutor instructed the jury not to consider mitigating evidence or to answer all of the special questions "yes" simply because they had found the Petitioner guilty.

For these reasons this Court finds that there is no reasonable probability that the sentence would have been different had the jury not been exposed to these statements. The statements do not rise to the level of constitutional error and the Petitioner's fifteenth claim for relief, to the extent that it challenges statements made during closing arguments of the sentencing phase of the trial, is denied.


Claim Sixteen: Petitioner's death sentence is based on
evidence of a constitutionally void prior conviction.

At the sentencing phase, evidence of the Petitioner's prior record was introduced. Included, was a rape conviction for which the Petitioner had been sentenced to life imprisonment. Upon filing this Petition, the Petitioner also filed a petition for federal habeas corpus relief with regards to the rape conviction. In that petition, the Petitioner requested relief on the grounds that the rape conviction was obtained in violation of the

58

001607

Petitioner's rights to effective assistance of counsel, a fair and impartial jury, and due process. (See Petition, paragraphs 170-173).

The Petitioner argues that the rape conviction constituted the only past act of violence on which the jury could have relied in answering "Yes" to the second statutory question. Based on his contention that his rape conviction is invalid, the Petitioner argues that the answer to the second statutory question should have been "No" and as a result, his death sentence must be declared void.

On March 28, 1991 United States District Court Judge David Hittner denied the Petitioner's petition for writ of habeas corpus with regards to the rape conviction, finding no constitutional error. Aranda v. Collins, C.A. H-89-1383, (S.D. Tex., March 28, 1991). Because the Petitioner's rape conviction has been found valid, Petitioner's sixteenth ground for relief is moot.

Based on the Petitioner's valid rape conviction and other evidence of the Petitioner's future dangerousness[23], the Petitioner's Sixteenth claim for relief is denied.

Claim Seventeen: Petitioner's death sentence is based on erroneous, unreliable and inflammatory evidence of prior convictions.

The Petitioner claims that the introduction into evidence of three penitentiary packets, which contained mug shots and

---

[23]    The State presented evidence of a 1966 conviction for burglary with intent to commit theft and a 1971 conviction for theft.

59

information about the Petitioner's three prior convictions, was so prejudicial that the Petitioner's sentence should be vacated.

As stated, a federal habeas court does not sit as a "super state supreme court" when reviewing evidentiary rulings. <u>Bailey v. Procunier</u>, 744 F.2d 1166, 1168 (5th Cir. 1984). An evidentiary error justifies federal habeas relief only where the error relates to evidence that is "crucial, critical, or highly significant" in the context of the entire trial. <u>Thomas v. Lynaugh</u>, 812 F.2d 225, 230 (5th Cir. 1987). In light of the other evidence presented at the sentencing phase, it is doubtful, at best, that the Petitioner's mug shots did anything more than identify the Petitioner as the same man who was convicted of three other offenses. Because the mug shots are not crucial, critical or highly significant, this Court denies relief on this point.

The Petitioner's second point with regards to this claim is that the introduction of his rape conviction was misleading and prejudicial because the conviction itself was only two months old. The Petitioner argues that two months is not enough time in which to show that he could be rehabilitated. In *Williams v. Lynaugh*, evidence of an armed robbery for which the petitioner had been neither charged nor convicted was introduced at the punishment phase of his trial. Williams argued that because he had not been convicted of that offense, its introduction lacked reliability and resulted in an arbitrary imposition of the death penalty. Relying on prior decisions, the Fifth Circuit reasoned as follows:

> [t]he focus of the Texas capital sentencing procedure is to have all the relevant evidence before the jury when

60

> answering the special issues which determine whether the death penalty will be imposed (citation omitted). . . . Evidence of these unadjudicated crimes is clearly relevant to the jury's task of determining whether there is a probability that Williams would continue to commit acts of violence as required by special question two. . . . We hold that the admission of unadjudicated offenses in the sentencing phase of a capital trial does not violate the eighth and fourteenth amendments.

Williams v. Lynaugh, 814 F.2d at 208.

In this case, evidence of the Petitioner's two month old rape conviction is likewise relevant to whether there is a probability that he would continue to commit acts of violence.

Given the reasoning in *Williams v. Lynaugh* and the rule in the Fifth Circuit that evidence of unadjudicated crimes is relevant to the jury's task of determining whether the defendant will continue to commit acts of violence, see Williams v. Lynaugh, 814 F.2d 205 (5th Cir. 1987) *cert. denied* 484 U.S. 935, 108 S.Ct. 311 (1987); Landry v. Lynaugh, 844 F.2d 1117 (5th Cir. 1988) *cert. denied*, 488 U.S. 900, 109 S.Ct. 248 (1988), Milton v. Procunier, 744 F.2d 1091 (5th Cir. 1984) *cert. denied*, 471 U.S. 1030, 105 S.Ct. 2050 (1985), this Court finds that the Petitioner's two month old rape conviction was properly admitted, and denies the Petitioner's claim for relief on this point.

Finally, the Petitioner argues that because the penitentiary packet for his rape conviction erroneously stated that there was no appeal pending, and because the jury was given no instruction concerning the non-final status of the conviction, the jury was led to believe that the Petitioner was already serving a life sentence for the rape conviction, thus to punish the defendant the jury

61

believed it had to impose the death sentence. The Petitioner claims that these circumstances led to an unreliable imposition of the death penalty.

Because there is no constitutional requirement that a jury be instructed as to the finality of prior convictions, and because the Petitioner's hypothesis is not grounded in any legal authority or reference to the record, this Court denies the Petitioner's claim for relief on this point.

### Claim Eighteen: Petitioner's death sentence is based on erroneous, unreliable, and inflammatory evidence of unadjudicated prior offenses.

The Petitioner claims that at the sentencing phase of his trial, a police officer who was testifying as to the Petitioner's reputation for being a peaceful and law abiding citizen, left the impression that the Petitioner was suspected of organized criminal activity. The Petitioner argues that the introduction of such evidence renders the jury's decision to impose the death sentence inherently unreliable. As stated with regards to the Petitioner's seventeenth claim for relief, evidence of unadjudicated crimes is relevant to the jury's task of determining whether the defendant will continue to commit acts of violence, Williams v. Lynaugh, 814 F.2d 205 (5th Cir. 1987), Landry v. Lynaugh, 844 F.2d 1117 (5th Cir. 1988), and Milton v. Procunier, 744 F.2d 1091 (5th Cir. 1984).

Based on these cases, this court finds that evidence as to suspected organized criminal activity did not render the jury's imposition of the death sentence inherently unreliable, and denies

‹ 001011

the Petitioner's Eighteenth claim for relief.

### Claim Nineteen: Petitioner's death sentence is based on erroneous, unreliable, and inflammatory hearsay and reputation evidence.

In Texas reputation testimony may be admitted at the punishment phase of a criminal trial if it is based on the witness's personal knowledge of the defendant's reputation, but without any reliance on the particular offense for which the defendant is on trial, Mitchell v. State, 524 S.W.2d 510 (Tex.Crim.App. 1975). The Petitioner relies on this rule and claims that none of the reputation testimony offered by seven police officers at the punishment phase of his trial, (R. vol 10, pgs. 1060-95), satisfied this requirement. In a conclusory sentence, the Petitioner states "[t]his testimony was therefore erroneously admitted in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments of the U.S. Constitution". (Petition, para. 190).

Essentially, the Petitioner challenges whether the proper predicate was laid before the trial court admitted the testimony of the seven officers. As stated at several points in this memorandum, federal habeas courts do not sit as a "super state supreme courts" and review the evidentiary rulings of the state trial court. Bailey v. Procunier, 744 F.2d 1166, 1168 (5th Cir. 1984). An evidentiary error justifies federal habeas relief only where the error relates to evidence that is "crucial, critical, or highly significant" in the context of the entire trial. Thomas v. Lynaugh, 812 F.2d 225, 230 (5th Cir. 1987). Again the error, if

63

any, is not related to evidence that is crucial, critical, or highly significant in the context of the entire trial. Reputation testimony goes to the second statutory question. Even if none of the officers' testimony had been admitted, there is no indication that the jury's decision to impose the death penalty would have been different. On these grounds the Petitioner's nineteenth claim for relief is denied.

> Claim Twenty: The Texas Death Sentencing Statute, on its face and as applied in this case, improperly allows into evidence at the sentencing phase of a capital case all evidence deemed relevant regardless of how misleading, unreliable or irrelevant.

The Petitioner's twentieth claim is that the Texas capital sentencing scheme (Tex. Code Crim. Proc. art. 37.071) on its face, allows the admission of all relevant evidence without scrutiny for unfair prejudice. In so doing the scheme deprives the capital defendant of due process, a fair trial, and a reliable determination that death is the appropriate punishment.

The Petitioner wants this court to find that the Texas capital sentencing scheme, which presently allows the jury to consider all relevant evidence, and has been found constitutional in _Jurek v. Texas_, 428 U.S. 262, 96 S.Ct. 2950 (1976), should be narrowed so as to allow the jury to consider only that evidence which is shown to be relevant and not misleading, unreliable or inaccurate. This Court finds that _Jurek v. Texas_, as presently understood, allows a trial court to consider whether evidence is prejudicial before admitting it as relevant. _Smith v. State_, 676 S.W.2d 379, 390

64

(Tex.Crim.App. 1984) *cert. denied*, 471 U.S. 1061, 105 S.Ct. 2173 (1985).

In *Jurek v. Texas* the Supreme Court upheld the facial validity of the Texas capital punishment scheme. The Court relied on the structure of the Texas statute. Before reaching a guilty verdict the jury is required to find at least one of five factors which narrow the class of defendants who may be found guilty of capital murder. Then at the sentencing phase, the jury is allowed to consider all relevant evidence as to why the death penalty should or should not be imposed. While Texas has not adopted a list of aggravating circumstances which must be present before a death sentence is imposed, the *Jurek* court found that narrowing the class of defendants who could be found guilty of capital murder at the guilt-innocence phase served much the same purpose and satisfied Eighth Amendment requirements. In Texas, then, once a jury has reached the sentencing phase, the jury need only consider evidence relevant to the question of whether the death sentence should or should not be imposed. Jurek v. Texas, 428 U.S. at 270-74, 96 S.Ct. 2956-57.

At the sentencing phase of a capital murder trail, the trail court has wide discretion in admitting or excluding evidence. This discretion, however, only extends to the question of relevance. In other words the rules of evidence are not altered at the sentencing phase of a capital murder trial. Smith v. State, 676 S.W.2d at 390 (Tex.Crim.App. 1984); Porter v. State, 578 S.W.2d 742 (Tex.Crim.App. 1979) *cert. denied*, 456 U.S. 965, 102 S.Ct. 2046

001014

(1982).  The Petitioner contends that evidence admitted at the sentencing phase of a capital murder trial should be found neither misleading, unreliable nor inaccurate, in addition to having been found relevant according to the rules of evidence.  This contention is not inconsistent with the Supreme Court's holding in *Jurek v. Texas*, nor the Texas Court of Appeals' holding in *Smith v. State*.  For this reason the Petitioner's twentieth claim for relief is denied[24].

> **Claim Twenty-One:  The Texas Death Sentencing Statute, on its face and as applied in this case, provides inadequate guidance to the jury on its ability to consider and act upon mitigating evidence proffered by the defense as the basis for a sentence less than death.**

In his twenty-first claim the Petitioner raises the same issues that was before the United States Supreme Court in Franklin v Lynaugh, 487 U.S. 164, 108 S.Ct. 2320 (1988)[25].  First the Petitioner argues that the Texas capital sentencing scheme on its face fails to provide the jury with sufficient guidance as to the weight of available mitigating evidence.  Second, the Petitioner argues a properly instructed jury could have concluded,

---

[24]    The Petitioner's twentieth ground for relief is also based on his claim that the Texas capital sentencing scheme as applied in his case, allowed the admission of evidence that was erroneous, unreliable, inflammatory and unfairly prejudicial.  At claims seventeen through nineteen this court addressed the validity of the Texas capital sentencing scheme as applied in the Petitioner's case, and will not review those arguments at this point.

[25]    This court finds, based on the analysis in Franklin v. Lynaugh, the decision in that case does not present a "new rule" and may be applied in this case. See Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060 (1989).

66

001015

based on their residual doubt as to the Petitioner's guilt, that the Petitioner lacked sufficient deliberateness to justify an affirmative answer to special statutory question number one.

## A. Facial Challenge

To the extent that the Petitioner challenges the facial validity of the Texas capital sentencing scheme, this Court as previously stated holds that the Supreme Court in *Jurek v. Texas*, upheld the constitutional validity of the Texas capital murder scheme[26]. This Court sees nothing in this Petition which would require a change in the *Jurek* holding.

## B. "As Applied" Challenge

In *Franklin v. Lynaugh* the petitioner challenged the Texas sentencing scheme on the issue of whether the Eighth Amendment required a Texas trial court to give jury instructions relating to the consideration of mitigating evidence presented at the sentencing phase of the petitioner's capital murder trial. At the sentencing phase of Franklin's trial he presented no mitigating evidence other than a stipulation that his disciplinary record while incarcerated for unrelated offenses was without incident. Franklin submitted five special requested jury instructions all of which essentially told the jury that any evidence considered by them to mitigate against the death penalty should be taken into account and alone could be used by them to return a negative answer to any one of the special statutory questions. The trial court did not give any of Franklin's instructions and instead told the jury

---

[26]     See discussion *supra*, at pgs. 63-65.

001016

to remember all of the instructions previously given and be guided by them.

In Franklin's habeas corpus petition he complained that absent his special requested instructions the Texas sentencing scheme limited the jury's consideration of mitigating evidence contrary to the Supreme Court's decision in Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954 (1978). The federal district court denied Franklin's claim, and the circuit court affirmed the district court's denial. The Supreme Court granted certiorari to determine if the trial court's refusal to give the special requested instructions violated Franklin's Eighth amendment right to present mitigating evidence at the sentencing phase of his capital murder trial.

Despite the Supreme Court's conclusion in Lockett v. Ohio[27],

---

[27]    In Lockett, the Supreme Court relied on Jurek before finding that the Ohio capital sentencing statute did not satisfy eighth amendment requirements.

Jurek involved a Texas statute which made no explicit reference to mitigating factors. (citations omitted) Rather, the jury was required to answer three questions in the sentencing process,. . . The statute survived the petitioner's Eighth and Fourteenth Amendment attack because three Justices concluded that the Texas Court of Criminal Appeals had broadly interpreted the second question -- despite its facial narrowness -- so as to permit the sentencer to consider "whatever mitigating circumstances" the defendant might be able to show. . . In this regard the statute now before us is significantly different. . . The limited range of mitigating circumstances which may be considered by the sentencer under the Ohio statute is incompatible with the Eighth and Fourteenth Amendments. To meet constitutional requirements, a death penalty statute must not preclude consideration of relevant mitigating factors.

438 U.S. at 607-08, 98 S.Ct. at 2966-67.

001017

that the decision in that case did not require reversal of the Court's earlier approval of the Texas sentencing scheme in *Jurek*, Franklin complained that the Texas sentencing scheme did not provide a sufficient opportunity for the jury to consider at the sentencing phase any residual doubt it had as to the petitioner's guilt, nor did the Texas scheme allow the jury to give adequate weight to the Petitioner's good behavior while in prison. The Petitioner in this case makes the same arguments.

As the Petitioner admits in his Petition, he presented no mitigating evidence at the penalty phase of his trial. In his closing argument, however, the Petitioner's counsel did remind the jury that the Petitioner had been an inmate of the prison system in the past and that the State had not presented any evidence of the Petitioner's violent behavior in prison. Furthermore, the Petitioner argues that at the guilt-innocence phase of his trial evidence indicated (1) that the Petitioner had no knowledge of his brother's plans to pick up marihuana in Laredo, (2) that he was not armed until he and his brother picked up the marihuana, (3) that he had been drinking that night (4) that immediately prior to the shooting a police officer was walking towards the car with his hand on his service revolver, and (5) that the bullet that killed officer Albidrez may not have come from the gun the Petitioner fired. In other words, the Petitioner argues that a properly instructed jury could have concluded on the basis of the evidence listed that the shooting lacked sufficient "deliberateness" to require an affirmative answer to the first special statutory

69

question.

The petitioner in *Franklin* also argued that residual doubt as to whether he was responsible for the victim's death, and to whether he intended to cause the victim's death was created by evidence presented at trial, but not treated as mitigating evidence at the sentencing phase. The Supreme Court found, however, that the structure of special statutory question number one allowed the jury to consider any residual doubt as to the defendant's culpability.

> The Texas courts have consistently held that something more must be found in the penalty phase -- something beyond the guilt-phase finding of "intentional" commission of the crime -- before the jury can determine that a capital murder is "deliberate" within the meaning of the first Special Issue. See, *e.g. Marquez v. State*, 725 S.W.2d 217, 244 (Tex.Crim.App.1981); *Fearance v. State* 620 S.W.2d 577, 584 (Tex.Crim. App.1981) In fact juries have found, on occasion, that a defendant had committed an "intentional murder" without finding that the murder was a "deliberate" one. See, *e.g. Heckert v. State* 612 S.W.2d 549, 552 (Tex.Crim.App.1981). Petitioner was not deprived of an opportunity to make a similar argument here in mitigation.

Franklin v. Lynaugh, 108 S.Ct. at 2328; see also Lowenfield v. Phelps, ____ U.S. ____, 108 S.Ct. 546, 555 (1988) (the Texas sentencing scheme adequately allows the jury to consider the mitigating aspects of the crime and sufficiently provides for jury discretion).

In conclusion the *Franklin* court found that the trial court's denial of the petitioner's special instructions "in no way limited his efforts to gain full consideration by the sentencing jury -- including a reconsideration of any 'residual doubt' from the guilt phase -- of petitioner's deliberateness". Id.

061019

As stated, the Petitioner in this case presented no mitigating evidence at the sentencing phase of his trial and other than conclusory allegations in his Petition has shown nothing to indicate to this Court that such evidence existed. There is nothing in the record to indicate that he requested special instructions regarding the jury's consideration of residual doubt, and as *Franklin* holds nothing in the Texas capital sentencing scheme prevents the jury from considering residual doubt with regards to a defendant's deliberateness. For these reasons the Petitioner's twenty-first claim to the extent that it challenges the jury's ability to consider residual doubt as to the Petitioner's deliberateness is denied.

As for the jury's ability to give mitigating weight to the Petitioner's prison record, this Court holds that the jury was free to evaluate the Petitioner's disciplinary record as evidence of his character in response to the second special statutory question. See Franklin v. Lynaugh, ____ U.S. at ____, 108 S.Ct. at 2329-30; Skipper v. South Carolina , 476 U.S. 1, 4, 106 S.Ct. 1669, 1670 (1986). For this reason this Court denies the Petitioner's twenty-first claim to the extent that it challenges the jury's ability to give mitigating weight to his prison record.

Claim Twenty-Two:  The trial court failed to instruct the jury on the nature, function and definition of mitigating evidence, and the manner in which their consideration of the mitigating evidence could be included in their responses to the questions required under Article 37.071.

In his twenty-second claim the Petitioner argues that the

001020

trial court failed to instruct the jury that it must consider all
mitigating evidence, and failed to instruct the jury how to respond
if it concluded that mitigating evidence called for a sentence less
than death.    The Petitioner alleges that in so doing the trial
court violated his rights under the Fifth, Sixth, Eighth and
Fourteenth Amendments.

In support of his claim the Petitioner argues that the
instructions did not address or even implicate the concept of
mitigation and moreover the following sentence implicitly
instructed the jury to ignore mitigating evidence:   "During your
deliberations you shall not consider or discuss what the effect of
your answer to the above issues might be".

This Court finds that a reasonable juror would understand this
sentence as an admonition not to allow the consequences of
answering the special statutory questions either affirmatively or
negatively enter into their discussion concerning the evidence, and
to consider only the evidence presented.    The Petitioner's
interpretation of this sentence on its own is strained, and when
considered in context, the Petitioner's interpretation is
unconvincing.   In the last paragraph, before the three special
statutory questions are listed, the instructions state "You are
instructed that in answering the issues submitted to you, you may
take into consideration all of the facts shown by the evidence
admitted before you in the full trial of this case". (Tr. vol. 2,
p. 171).   This sentence directly counters the Petitioner's
interpretation of the sentence at issue.  Because it is within this

72

context that the challenged sentence appears, this Court finds the Petitioner's interpretation invalid.

As stated in the discussion of the Petitioner's twenty-first claim, the Petitioner presented no mitigating evidence that would have required additional instructions from the trial court. See Franklin v. Lynaugh, 108 S.Ct. at 2328; see also discussion *supra*, at pgs. 66-71. In addition, it appears to this Court that the Supreme Court in *Jurek v. Texas* upheld the constitutional validity of the Texas capital sentencing scheme. Thus to the extent that the Petitioner challenges the trial court's failure to give additional instructions, the Petitioner's twenty second claim is denied. Jurek v. Texas, 428 U.S. 262, 96 S.Ct. 2950; see also Penry v. Lynaugh, 492 U.S. 302, 109 S.Ct. 2934, Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954.

For the reasons stated the Petitioner's twenty-second claim for relief is denied.

Claim Twenty-Three:  The Texas Death Sentencing Statute operated to deprive Petitioner of effective assistance of counsel by transforming available mitigating evidence into aggravating evidence, and thereby preventing counsel from developing and presenting evidence that would have called for a sentence less than death.

In his twenty third ground for relief the Petitioner argues that his counsel could have presented evidence of the Petitioner's family history, juvenile delinquency, past experiences with police brutality, and past instances of head injury, had the Texas sentencing statute allowed the jury to give such evidence independent mitigating weight. The Petitioner has filed several

73

001022

affidavits from family members in support of this claim.

In *Penry v. Lynaugh* the Supreme Court concluded that the Texas Capital sentencing statute did not allow the jury to consider fully the effect of a defendant's severe mental retardation and abused childhood. <u>Penry v. Lynaugh</u>, 109 S.Ct. at 2952. While the Court affirmed the facial validity of the Texas sentencing scheme, it also found that the presence of mitigating factors, that is evidence of the petitioner's sever mental retardation and abused childhood, necessitated additional special issues to allow the jury to express its "reasoned moral response" to the defendant's background. <u>Id</u>. This evidence was offered during penalty phase of Penry's trial. <u>Id</u> at 2947.

Factors important to the rationale in *Penry* were not presented at the punishment phase of the present case. The Petitioner now suggests that he would have offered evidence of "family history, early juvenile delinquency, past experiences with police brutality, and past instances of head injury which have impaired Petitioner's social functioning and emotional development, his capacity to control impulses, and his ability to reflect on the appropriateness of his actions before manifesting them." (Petition para. 217). In support of this claim the Petitioner offers several affidavits from family members. (Petitioner's Exs. 19-23).

It is important to note, however, that while the affidavits speak of the Petitioner's prior juvenile record and one incident thirteen years prior to the trial where the Petitioner was allegedly struck on the head by a policeman with a night stick,

74

001023

they do not indicate that the Petitioner was severly abused as a child or that he suffered from either significantly reduced mental capacity or mental retardation. Nor has the Petitioner made such a claim. In fact the Petitioner has not presented any evidence which would support a conclusion that he has a reduced mental capacity or is mentally retarded. Thus the Court feels that the Petitioner has made no showing of mitigating evidence that could arguably bring him within the *Penry* rule. *Penry v. Lynaugh*, 109 S.Ct. 2934, see also <u>DeLuna v. Lynaugh</u>, 890 F.2d 720, 722 (5th Cir. 1989) (absence of mitigating evidence renders *Penry* inapplicable). For this reason the Petitioner's twenty-third claim for relief is denied.

<u>Claim Twenty-Four: The Texas Death Penalty Sentencing Statute, on its face and as applied in this case, provides inadequate guidance to the jury on the meaning of critical terms in the special questions.</u>

In his twenty fourth claim the Petitioner argues that the Texas Death Penalty Sentencing Statute's failure to define the terms "deliberately","probability" and "society" results in an inherently unreliable determination that death is the appropriate punishment. Specifically, the Petitioner argues that the Texas Court of Appeals' finding that the term "deliberately" is narrower than "intentionally" -- and therefore an affirmative answer to the first statutory question is not necessarily required upon a finding of guilt -- is contrary to the common understanding of the two words. As a result a person of ordinary intelligence could neither

75

explain nor apply the difference[28].

As stated with regards to the Petitioner's twenty-third claim for relief,

> The Texas courts have consistently held that something more must be found in the penalty phase -- something beyond the guilt-phase finding of "intentional" commission of the crime -- before the jury can determine that a capital murder is "deliberate" within the meaning of the first Special Issue. See, e.g. *Marquez v. State*, 725 S.W.2d 217, 244 (Tex.Crim.App.1981); *Fearance v. State* 620 S.W.2d 577, 584 (Tex.Crim. App.1981) In fact juries have found, on occasion, that a defendant had committed an "intentional murder" without finding that the murder was a "deliberate" one. See, *e.g. Heckert* v. State 612 S.W.2d 549, 552 (Tex.Crim.App.1981).

Franklin v. Lynaugh, 108 S.Ct. at 2328.

In so doing, the Texas courts have insured the Texas sentencing scheme's constitutional validity. See Jurek v. Texas, 428 U.S. 262, 96 S.Ct. 2950 (1976); Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954 (1978); Penry v. Lynaugh, 492 U.S. 302, 109 S.Ct. 2934 (1989); Thompson v. Lynaugh, 821 F.2d at 1060 (5th Cir. 1987); Milton v. Procunier, 744 F.2d at 1095-96 (5th Cir. 1984) (challenge to the trial court's refusal to allow defense counsel to question potential jurors about their understanding of the terms "deliberately" and "probability").

Thus, the Petitioner's challenge to the Texas Death Penalty Statute on its face is denied on the grounds that any relief would

---

[28]     In one conclusory paragraph the Petitioner states that the same argument is applicable to the terms "probability" and "society". Petition para. 226. Because the Petitioner has failed to indicate how the use of these words amounted to a violation of his constitutional rights, this Court denies relief to the extent that it is requested for the use of the terms "probability" and "society".

require this court to declare that Texas Death Penalty scheme unconstitutional, which as this Court has stated, has already been found constitutional.

It appears that the Petitioner challenges the trial court's instructions in his case as well. In *Penry v. Lynaugh* the Supreme Court found error in the trial court's failure to define "deliberately" because without such a definition the jury could not adequately consider evidence of Penry's mental retardation. <u>Penry v. Lynaugh</u>, 109 S.Ct. at 2949.

As discussed with regard to the Petitioner's twenty third claim, the Petitioner in this case did not present at any time evidence "which could have had any impact upon his ability to act deliberately". <u>DeLuna v. Lynaugh</u>, 890 F.2d at 723, <u>see also</u> discussion *supra*, pgs. 73-75. Because there was no evidence upon which the jury would have become confused with regards to the term "deliberately" the trial court did not err in refusing to define the term. <u>Id</u>. at 726.

Thus as applied in this case the Texas Death Penalty Statute is valid, and the Petitioner's twenty-fourth claim for relief is denied.

<u>Claim Twenty-Five:  Court rulings precluded Petitioner from presenting and having the jury consider, evidence mitigating his blameworthiness and otherwise mitigating against the appropriateness of the death penalty</u>.

In his twenty-fifth claim for relief the Petitioner challenges three of the trial court's rulings at the sentencing phase of his trial: (1) the trial court's denial of the Petitioner's request to

001026

present evidence of the plea bargain offered the Petitioner, (2) the trial court's denial of the Petitioner's attempt to present evidence of Officer Viera's reputation for violence, and (3) the trial court's denial of the Petitioner's motion for continuance.

This Court has previously addressed the second and third points of the Petitioner's claim, see discussion *supra*, pgs. 51-53. In addition this Court finds that there is no basis for the Petitioner's allegation that the trial court improperly denied his motion to admit evidence of a plea bargain offered the Petitioner. According to the record, life in return for a plea of guilty, was never offered the Petitioner. (R. vol. 10, p. 1,097). On that ground the trail court denied the Petitioner's motion. Based on the record which indicates that the Petitioner was never offered a plea bargain, and on the grounds previously stated, this Court denies the Petitioner's twenty-fifth claim for relief.

Claim Twenty-Six:   The Court misinstructed the jury as to the meaning of critical terms in the Texas Death Sentencing Statute.

The Petitioner seems to argue that the prosecutor's and the trial court's statements at vior dire were improper and prevented the jury from understanding their duty to give effect to mitigating evidence. In addition the Petitioner claims that the prosecutor's statements during the sentencing phase closing arguments led the jury to believe that their finding of guilt warranted an affirmative answer to each of the special questions. As a result, the Petitioner argues the validity of his death sentence is

001027

unreliable, and he was deprived of his rights protected by the Fifth, Sixth, Eighth and Fourteenth Amendments.

*Voir dire* is critical to an individual's Sixth Amendment right to an impartial jury, in that it allows a court or defense counsel to remove prospective jurors who will not be able to impartially follow the court's instructions. Rosales-Lopez v. United States, 451 U.S. 182, 101 S.Ct. 1629 (1981). In this claim the Petitioner has not alleged that his counsel's ability to exercise peremptory challenges was impaired. For this reason, this Court finds that the Petitioner has failed to state a claim, and denies the Petitioner's claim for relief to the extent that it is based on the Sixth Amendment.

In death penalty cases the Eighth Amendment guarantees an individualized assessment of the appropriateness of the death penalty in a particular defendant's case. This includes the consideration of evidence about the defendant's character and his or her past record. Woodson v. North Carolina, 428 U.S. 280, 96 S.Ct. 2978 (1976); Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954 (1978); Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869 (1982). Nothing indicates that Eighth Amendment concerns are implicated by statements made at voir dire. Furthermore, statements by counsel made in closing arguments are not evidence in a case.

Where a prosecutor's arguments do no more than narrow the issues in the State's favor, they cannot be judged as having a decisive effect on a jury. See Boyde v. California, ___ U.S. ___, ___, 110 S.Ct. 1190, 1200 (1990). Because this Court finds that the

79

prosecutor's statements at closing argument were not constitutionally infirm, and because Eighth Amendment concerns are not implicated at *voir dire*, this Court denies the Petitioner's claim to the extent that it is based on the Eighth Amendment.

Finally, federal habeas corpus relief for due process violations will be granted only where the alleged violations undermined the fairness of the entire proceeding. See <u>Thompson v. Lynaugh</u>, 821 F.2d at 1060 (5th Cir. 1987) (citing <u>Henderson v. Kibbe</u>, 431 U.S. at 154-55, 97 S.Ct. at 1736-37 (1977)). The record indicates that neither the trial court nor the prosecutor made statements at voir dire that any reasonable person would construe as the Petitioner does in this claim. Furthermore, as stated, the statements of the prosecutor during closing arguments were not constitutionally improper. For these reasons the Petitioner's claim is denied to the extent that it is based on the Fourteenth Amendment.

The Petitioner also alleges that the statements made violated his Fifth Amendment rights. Neither the Respondent nor this court is able to formulate the Petitioner's Fifth Amendment challenge. (See Response and Motion for Summary Judgment, p. 135). For that reason the Petitioner's claim is denied to the extent that it is based on the Fifth Amendment.

<u>Claim Twenty-Seven: Petitioner was denied prompt judicial review of the jury's determination to impose death by a court with state-wide jurisdiction</u>.

The Petitioner claims that the length of delay between his

80

001029

conviction in April 1979 and the Texas Court of Criminal Appeals'
decision to affirm the conviction in September 1987, undermined
the reliability of the death sentence, prejudiced the Petitioner's
opportunity to present a successful case on retrial, and prejudiced
his efforts for post-conviction relief.

The U.S. Constitution does not require that a State grant an
appeal of right to a convicted criminal, but procedures used in
implementing state appeals must comport with the due process
clause. Evitts v. Lucey, 469 U.S. 387, 393 (1985). Texas Code of
Criminal Procedure article 37.071(h) provides for automatic review
of a sentence of death imposed in a capital murder conviction. The
Sixth Amendment states that "[i]n all criminal prosecutions, the
accused shall enjoy the right to a speedy and public trial." U.S.
Const. amend. VI. This amendment does not by its terms apply to
an appeal. The requirements of the Due Process Clause, however,
have been held to apply to a right of appeal created under state
law. Rheuark v. Shaw, 628 F.2d 297, 302 (5th Cir. 1980), cert.
denied, sub nom. Rheuark v. Dallas County, 450 U.S. 931, 101
S.Ct.1392 (1981).

The court in Rheuark determined that the four factors for
evaluating a delay in bringing an accused to trial as announced
in Barker v. Wingo, should also determine a possible violation of
due process rights by a delay on appeal. Rheuark v. Shaw, 628 F.2d
at 303. These four factors are the "[l]ength of delay, the reason
for the delay, the defendant's assertion of his right, and
prejudice to the defendant." Barker v. Wingo, 407 U.S. at 530, 92

81

001030

S.Ct. at 2192; Rheuark v. Shaw, 628 F.2d at 303 n. 8.

The Petitioner has failed to allege with any specificity prejudice caused by the delay. In addition this Court notes that no habeas petition was filed during the eight-year pendency of the appeal. Only now do the Petitioner's assertions arise with regard to the disposition of the action by the Texas Court of Criminal Appeals. Thus the mental anxiety allegedly suffered was in part due to the Petitioner's failure to take steps to eliminate further delay. Furthermore, in this case, the Petitioner was afforded an appeal on the merits, there is no contention that the Petitioner is innocent, and there is no hint of error or impropriety in the decision rendered by the Texas Court of Criminal Appeals. For the reasons stated this Court denies the Petitioner's twenty-seventh ground for relief.

### Claim Twenty-Eight: Petitioner was denied the effective assistance of counsel at trial and on direct appeal.

The Petitioner contends that he was denied effective assistance of counsel at trial and on appeal. The Petitioner raises the following issues in support of his claim:

(1) Trial counsel failed to investigate and present available defenses.

(2) Trial counsel failed to ask questions during *voir dire* concerning possible biases among the veniremen.

(3) Trial counsel failed to introduce numerous witnesses who testified at Juan's trial.

(4) Trial counsel failed to impeach prosecution witnesses effectively.

(5) Trial counsel failed to take advantage of available

82

evidence adduced by counsel for Juan Aranda at the hearing on his motion for a new trial.

(6)  Trial counsel failed to utilize important exhibits introduced at Juan Aranda's trial.

(7)  Trial counsel improperly failed to call witnesses who appeared at the harassment trial of Petitioner and Juan Aranda.

(8)  Trail counsel failed to make independent efforts to interview crucial State's witnesses before trial.

(9)  Trial counsel failed to conduct independent examinations of physical evidence.

(10) Trial counsel failed to conduct investigation of extraneous offenses counsel knew the State intended to prove against Petitioner during the sentencing hearing.

(11) Trial counsel failed to investigate and prepare for the penalty phase of trial.

(12) Trial counsel made insufficient efforts to cross-examine the State's witnesses at the sentencing phase.

(13) Trial counsel failed to request jury instructions necessary to protect the interests of the Petitioner.

(14) Trial counsel failed to research federal constitutional law precedents and failed to seek appointment of experts required to present pretrial motions and defense evidence effectively.

(15) Trial counsel's arguments to the jury at sentencing undermined his plea for a life sentence.

(16) Trial counsel failed to preserve objections.

(17) Appellate counsel failed to conduct research on federal constitutional law.

(18) Appellate counsel failed to submit a reply to the State's brief when persuasive answers to the State's arguments were available.


A. Appellate Counsel

The Petitioner raises two conclusory allegations concerning

83

001032

his appellate counsel. One, that appellate counsel failed to select meritorious issues for appeal, and two, that appellate counsel's reply to the Government's brief was ineffective. The Petitioner has failed to indicate which issues should have been raised on appeal or in what way appellate counsel's reply brief would have changed the outcome of the Petitioner's appeal.

Because the Constitution does not require appellate counsel to raise every nonfrivolous ground that might be raised on appeal. Ellis v. Lynaugh, 873 F.2d 830, 840 (5th Cir. 1989) *cert. denied*, __ U.S. ___, 110 S.Ct. 419 (1989) (citing Jones v. Barnes, 463 U.S. 745, 751, 103 S.Ct. 3308, 3312 (1983)), the Petitioner's claim to the extent that it involves his appellate counsel, fails.

## B. Trial Counsel

To demonstrate a violation of his Sixth Amendment right to counsel, the Petitioner must show that his counsel's performance was deficient and that this deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984). In *Strickland*, the Supreme Court set forth the test for evaluating such a claim as follows:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both

84

showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687, 104 S.Ct. at 2064.

The Fifth Circuit has uniformly applied the two-prong test of *Strickland* in evaluating the merits of claims of ineffective assistance of counsel. See, e.g., Ellis v. Lynaugh, 873 F.2d 830, 839 (5th Cir. 1989). In the present case, each of Petitioner's eighteen assertions regarding the performance of trial and appellate counsel, must be reviewed under the *Strickland* criteria.

While the Court approaches this review of the trial counsel's performance with due regard for the Petitioner's right to counsel, it is also important to remember the admonition of the *Strickland* court "that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers." Strickland v. Washington, 466 U.S. at 697, 104 S.Ct. at 2069. The nature of Petitioner's claims involves a great risk of trying to second-guess the strategic decisions made by trial and appellate counsel. The Supreme Court has clearly instructed that "[j]udicial scrutiny of counsel's performance must be highly deferential." Strickland v. Washington, 466 U.S. at 689, 104 S.Ct. at 2070; See also Ellis v. Lynaugh, 873 F.2d at 839.

The Petitioner's Sixth Amendment rights require that counsel render reasonably effective assistance as determined by "an objective standard". 466 U.S. at 687-8. In applying this test, the Petitioner must overcome the presumption that counsel "rendered adequate assistance and made all significant decisions in the

85

exercise of reasonable professional judgment". Id. at 690. Even if a question is raised regarding counsel's exercise of professional judgment, "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution". Id. at 692. To meet this prejudice requirement, the Petitioner must also show that counsel's errors undermined the outcome of the proceeding. Id. at 694.

The Petitioner's challenge to the effectiveness of trial counsel was raised in his Habeas Corpus Petition filed with the trial court. Ex parte Aranda, No. 9539-A, District Court Victoria County, Texas 49th Judicial District, Order of April 13, 1989. The trial judge dismissed the petition without specific reference to this issue. The Texas Court of Criminal Appeals also dismissed the Petitioner's petition. Ex parte Aranda, Writ No. 18,014-03, Texas Court of Criminal Appeals, Order April 18, 1989 (per curiam).[29]

After a review of the pleadings and materials on file, the Court finds that the record in this case is sufficient to examine the questions raised by the Petitioner on ineffective assistance

---

[29] Because the Texas state courts did not provide the Petitioner with an evidentiary hearing on this issue, no presumption of correctness arises under § 2254(d). Even so, the ultimate issue of whether trial counsel rendered ineffective assistance is a mixed question of law and fact subject to de novo review in a federal habeas proceeding. Strickland v. Washington, 466 U.S. at 698, 104 S.Ct. at 2070. (discussing Townsend v. Sain, 372 U.S. at 309 n.6, 83 S.Ct. at 755 n. 6). Subsidiary questions of fact made in the course of deciding an ineffective assistance claim are, however, subject to the deference requirement of § 2254(d). 466 U.S. at 698, 104 S.Ct. at 2070; see also Buxton v. Lynaugh, 879 F.2d at 144-45 (state court findings granted presumption of correctness even without live hearing on issues).

86

001035

of counsel. Several of the Petitioner's allegations are nothing more than conclusory statements[30], and the Petitioner's third allegation relates to evidence kept out of the proceedings by the Governments' motion in limine. The Petitioner's first, fifth, tenth, eleventh, twelfth and fifteenth allegations raise questions as to trial counsel's strategic and tactical decisions. It appears from the record that trial counsel was doing nothing which would show he was not functioning as "counsel" guaranteed by the Sixth Amendment. Finally, in the Petitioner's second, fourth, fifth, sixth, seventh, and sixteenth allegations, he fails to show that trail counsel's errors, if any, undermined the outcome of his trial.

When an ineffectiveness claim is the basis for a habeas proceeding, the Petitioner must "allege facts which, if proved, would overcome the presumption that trial counsel is effective and that trial conduct is the product of reasoned strategy decisions." Kelley v. Lynaugh, 862 F.2d 1126, 1132 (5th Cir. 1988), *cert denied*, 492 U.S. 925, 109 S.Ct. 3263 (1989) (quoting Taylor v. Maggio, 727 F.2d 341, 349 (5th Cir. 1984) *cert. denied*, 460 U.S. 1103, 103 S.Ct. 1803 (1983)). Because the Petitioner has failed to show that his trial counsel was ineffective according to the *Strickland* standard, the court denies the Petitioner's twenty-eighth claim for relief.

Claim Twenty-Nine:  The trial court improperly fostered

---

[30]     Nos. 8, 9, 13, and 14.

87

001036

**an intimidating and inflammatory atmosphere that undermined the presumption of Petitioner's innocence.**

The Petitioner claims that the presence of armed guards in the court room during his trial, bags of marihuana, inflammatory photos of the victim and the Petitioner in prison garb, prejudicial testimony about Juan's prior drug deals, and the Petitioner's outbursts in response to several court rulings, impinged on the presumption of the Petitioner's innocence. As a result the Petitioner was denied a fundamentally fair trial, and a reliable determination that death is the appropriate punishment.

This Court has previously addressed similar claims with regards the trial court's evidentiary rulings, and will not now revive those discussions. Therefore to the extent that it involves the presence of the bags of marihuana as evidence, photos of the victim and the Petitioner, and testimony about Juan's prior drug deals, the court denies the Petitioner's twenty-ninth claim for relief for reasons already stated.

With regards to the Petitioner's argument that inflammatory court rulings caused the Petitioner's outbursts, which in turn impinged on the Petitioner's presumption of innocence, this Court denies relief. A Petitioner cannot be granted federal habeas relief for something that he did at trial as a result of nothing more than his inability to control himself. Any prejudice caused by the Petitioner's outbursts does not rise to the level of constitutional error required for habeas corpus relief.

The Sixth and Fourteenth Amendments guarantee that "one accused of a crime is entitled to have his guilt or innocence

88

determined solely on the evidence introduced at trial. . . ". Holbrook v. Flynn, 475 U.S. 559, 106 S.Ct. 1340 (1986) (citing Taylor v. Kentucky, 436 U.S. 478, 98 S.Ct. 1930 (1978)). This guarantee, however, does not mean that the legal system presumes that jurors are unaware that the State has chosen to punish the defendant. Only where a particular practice poses such a threat to the fairness of the fact finding process, must that practice be subject to close judicial scrutiny. Holbrook v. Flynn, 475 U.S. at 568, 106 S.Ct. at 1345.

In *Holbrook v. Flynn*, the Supreme Court found that the issue of whether the presence of courtroom security warranted close judicial scrutiny should be decided on a case by case basis. The Court reasoned that in the juror's minds the presence of armed guards in the courtroom was not necessarily due to the defendant's culpability. It is possible that the jurors will attach no more significance to the guards in the court room than they do to guards in any other public place. Id. at 1345. In *Holbrook v. Flynn* there were six defendants and four uniformed state troopers seated in the first row of the spectator section. Because the jury could have concluded that the troopers may have been part of the usual courtroom security the Court found that the troopers did not present any risk of prejudice to the defendants.

In this case the Petitioner has presented nothing to indicate that the jurors would have thought the presence of security personnel was related to this particular case as opposed to being part of normal procedure. Based on what the Petitioner has

89

001038

presented with regard to the presence of security personnel, this Court denies the Petitioner's twenty-ninth claim for relief.

## CONCLUSION

The Petitioner has failed to make a substantial showing that his restraint and imposition of sentence resulted from the denial of a federal constitutional right. A writ of habeas corpus disturbing a state judgment may only issue if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States" as required under 28 U.S.C. § 2254(c)(3). Pulley v. Harris, 465 U.S. 37, 41, 104 S.Ct. 871, 874-75 (1984).

Therefore, it is hereby ORDERED, ADJUDGED, and DECREED that Respondent's Motion for Summary Judgment is GRANTED and that the Petition for Writ of Habeas Corpus is DENIED.

It is further ORDERED that the Motion for Evidentiary Hearing is hereby DENIED.

The Clerk shall send a copy of this Memorandum to the Petitioner, his counsel, and counsel for the Respondent.

Done this 31st day of December, 1991, at McAllen, Texas.

Ricardo H. Hinojosa
UNITED STATES DISTRICT JUDGE

001039