United States District Court
Southern District of Texas

**ENTERED**

May 04, 2020

David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| ARTURO DANIEL ARANDA, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 6:89-CV-13 |
| | § | |
| LORIE  DAVIS, | § | |
| | § | |
| Respondent. | § | |
| | § | |

## <u>ORDER</u>

In 1979, Arturo Daniel Aranda was sentenced to death for his role in killing a Laredo police officer.  Aranda submitted a federal petition for a writ of habeas corpus in 1989.  (Docket Entry No. 2).  After Aranda's petition was denied in 1991, (Docket Entry Nos. 26, 27), he filed a Motion under Rule 59(e) to Alter and Amend Judgment.   (Docket Entry Nos. 33, 34).  Respondent filed an opposition, (Docket Entry No. 38), and Aranda filed a reply (Docket Entry No. 39).  Aranda's Rule 59(e) motion has been pending since that time.

On September 25, 2018, this case was reassigned to the undersigned judge.  After receiving briefing from the parties, the Court will deny Aranda's Rule 59(e) motion.  The Court will not certify any issue for appellate review.

**I.     Background**

On direct appeal, the Texas Court of Criminals Appeals succinctly described the crime for which Aranda received a capital conviction and death sentence:

> The indictment jointly charged [Aranda] and his brother, Juan J. Aranda, with knowingly and intentionally causing the death of Pablo E. Albidrez, a peace officer by shooting him with a gun knowing that Albidrez was a police officer for the city of Laredo acting in the lawful discharge of an official duty.  . . . [T]he evidence shows that [Aranda] and his brother drove to Laredo from San Antonio. The purpose was to pick up a load of marihuana and take it to San Antonio.  After

the station wagon was loaded and the two men were leaving Laredo they were confronted by police officers who stopped them.  In the ensuing gun battle the deceased police officer, who was in uniform and who was in a marked police vehicle with its lights flashing, was killed by [Aranda] who was shooting with a pistol.

*Aranda v. State*, 736 S.W.2d 702, 703-04 (Tex. Crim. App. 1987).

On September 23, 1987, the Court of Criminal Appeals affirmed Aranda's conviction and sentence on automatic direct appeal.  The State of Texas then set an execution date for February 25, 1988.  Both the Court of Criminal Appeals and the United States Supreme Court stayed Aranda's execution while he filed a writ of certiorari.  When the Supreme Court denied certiorari review on June 30, 1988, the trial court set another execution date for November 9, 1988.  Through pro bono counsel, Aranda then sought state habeas review.  One week before his scheduled execution date, the Court of Criminal Appeals denied state habeas relief.

Aranda then proceeded to federal court.  The court stayed Aranda's execution date.  On April 20, 1989, Aranda filed a federal petition for a writ of habeas corpus raising twenty-nine grounds for relief.  (Docket Entry No. 2).  On October 15, 1991, the Honorable Ricardo H. Hinojosa denied federal habeas relief without holding an evidentiary hearing or allowing additional factual development.  (Docket Entry No. 26).  An amended memorandum and order was issued on December 31, 1991.  (Docket Entry No. 27).  A final judgment was issued that same date.  (Docket Entry No. 30).

On January 15, 1992, Aranda filed a timely motion to alter or amend judgment.  Respondent opposed the motion (Docket Entry No. 38), and Aranda filed a reply (Docket Entry No. 39).  Since Aranda filed his reply, the parties have not submitted any substantive motions or filings.[1]

---

[1]      Respondent makes various procedural arguments to preclude judicial consideration of Aranda's supplement to his Rule 59 motion: Aranda's supplement amounts to an untimely amendment of his Rule 59 motion, his

On September 25, 2018, this case was reassigned to the undersigned judge.  This Court ordered the parties to confer and provide a joint update discussing "the status of this litigation, any relevant changes in the law since the denial of relief, and what proper steps should be taken to renew federal habeas review."  (Docket Entry No. 47).  The parties provided an update and explained that the issues remaining in this case required adversarial briefing.  (Docket Entry No. 59).  The parties have provided significant briefing that discusses the merits of Aranda's Rule 59 motion.  In particular, the parties have addressed changes that have occurred in the law over the last few decades.

## II.    Rule 59 Standard

This matter comes before the Court on the limited question of whether Aranda has shown that this Court should alter or amend the judgment in this case.  Federal procedure limits post-judgment review.  "Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly."  *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004).  A district court reviewing a Rule 59(e) motion must balance "two important judicial imperatives relating to such a motion: 1) the need to bring litigation to an end; and 2) the need to render just

---

supplement is the functional equivalent of an untimely Rule 60(b) motion, a court cannot consider new precedent that occurs after the period between judgment and the filing of a Rule 59 motion, there has been no significant change in precedent since 1991, the doctrine of laches precludes relief, and Aranda is undeserving of relief because he has not actively litigated this case in years.  Without extensively addressing each of the arguments, the Court makes the following observations.  Aranda's recent briefing addresses new law and discusses the facts in a different light, but he has filed that briefing only at the invitation of the Court.  Aranda has been on death row for four decades, almost thirty of which have been without meaningful judicial review.  There has been inexcusable delay in this case.  Respondent lays blame at Aranda's feet for that delay but fails to acknowledge the State's own interest in an expedient defense of its judgments.  Years ago, the State repeatedly tried to execute Aranda's death sentence while courts considered his constitutional claims, but then has made no effort to move this litigation forward for almost three decades.  Habeas relief was denied; delay in this case would prejudice the State of Texas, not Aranda. Yet the State of Texas has shown no interest in effectuating Aranda's valid criminal sentence nor expressed concern at the pending federal litigation.  Respondent's own inaction discourages any reliance on laches or other procedural defenses.  Additionally, Respondent has not cited any precedent that convincingly discourages consideration of law created during the pendency of a Rule 59 motion.  In the context of the unique procedural posture of the matters before the Court, and given the significant legal developments over the years, the interest of justice discourages reliance on specious procedural theories and encourages serious inquiry into the integrity of Aranda's capital conviction and sentence.

decisions on the basis of all the facts." *Templet*, 367 F.3d at 479.  "Rule 59 gives the trial judge ample power to prevent what he considers to be a miscarriage of justice.  It is the judge's right, and indeed his [or her] duty, to order a new trial if he [or she] deems it in the interest of justice to do so."  11 Wright, Miller & Kane, Federal Practice & Procedure Civil, § 2803 (2d ed. 1995) (citing *Juneau Square Corp. v. First Wis. Nat. Bank*, 624 F.2d 798, 807 (7th Cir. 1980)). However, due to the extraordinary nature of this remedy the Fifth Circuit has found that the Rule 59(e) standard "favors denial of motions to alter or amend a judgment." *Southern Constructors Group, Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993); *see also Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 174 (5th Cir. 1990).

A district court has considerable discretion to grant or deny a motion under Rule 59(e); however, "such discretion is not limitless."  *Templet*, 367 F.3d at 479.  Rule 59 only allows a court "to alter or amend a judgment to (1) accommodate an intervening change in controlling law, (2) account for newly discovered evidence, or (3) correct a manifest error of law or fact." *Trevino v. City of Fort Worth*, 944 F.3d 567, 570 (5th Cir. 2019).

## III.  Analysis

Aranda's Rule 59 motion raised several arguments which fell into two categories: (1) intervening changes in the law relating to his claim under *Penry v. Lynaugh*, 492 U.S. 302 (1989) prove that his jury could not fully consider his mitigating evidence and (2) the amended memorandum and order applied the wrong legal standard, reached an incorrect result, and was factually incomplete absent an evidentiary hearing.  Aranda's recent briefing has refined his arguments to challenge the adjudication of three claims based on new legal developments regarding: (1) his ineffective-assistance-of-counsel claim; (2) his *Penry* claim; and (3) his claim challenging his confession.

The Court has reviewed the claims raised in Aranda's initial Rule 59 pleadings and summarily finds that the earlier filings did not show any error requiring the alteration or amendment of judgment. This Court's discussion, therefore, will focus on the arguments raised in the recent briefing. The Court's analysis will center on whether Aranda has shown intervening law or manifest error that calls into question the judgment in this case.

Much has changed since the denial of Aranda's federal petition. Still, post-judgment review of Aranda's arguments is limited. Legal developments will only require altering or amending the judgment if they would have changed the result that should have been reached. Also, "[t]he manifest injustice standard presents . . . a high hurdle" for the movant. *Westerfield v. United States*, 366 F. App'x 614, 619 (6th Cir. 2010). The Fifth Circuit has explained that a "manifest error" as one that is "plain and indisputable, and that amounts to a complete disregard of the controlling law." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). With that understanding, the Court will consider Aranda's post-judgment arguments.

### A.      Ineffective-Assistance-of-Counsel Standard

Aranda argues that this Court should reconsider the judgment regarding his ineffective-assistance-of-counsel claim "because it did not correctly apply the standards for deficiency and prejudice established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), as clarified by subsequent decisional law." (Docket Entry No 63 at 3). Relying on more-recent Supreme Court precedent, Aranda argues that the amended memorandum and order applied an incomplete legal standard to his ineffective-assistance claim and thus reached the wrong result. Aranda, however, has not shown a basis for Rule 59 relief on his ineffective-assistance claim.

In 1984, the Supreme Court established the constitutional baseline for effective legal representation and delineated the parameters for assessing resultant prejudice. The past two

decades have seen deeper exposition by the Supreme Court on the *Strickland* standard.  In 2000, the Supreme Court first overturned a death sentence using the *Strickland* analysis in *Williams v. Taylor*, 529 U.S. 362 (2000).  In subsequent years, the Supreme Court has emphasized the constitutional obligations of defense counsel in capital cases. *See Porter v. McCollum*, 558 U.S. 30 (2009); *Rompilla v. Beard*, 545 U. S. 374 (2005); *Wiggins v. Smith*, 539 U.S. 510 (2003). However, "none of these cases established retroactive constitutional rules."  *Ayestas v. Davis*, 933 F.3d 384, 390 (5th Cir. 2019).

The amended memorandum and order unquestionably applied the correct legal standard to Aranda's ineffective-assistance-of-counsel claim.   The decision relied on *Strickland* and repeatedly quoted from that decision and related precedent.  While Aranda may quibble about the specific wording used in the decision, it applied the correct legal principles to his ineffective-assistance claim.  Aranda's complaints amount to little more than disagreement with the result and are more properly raised on appeal.  The Court finds that Aranda has not shown any new law or manifest error requiring altering or amending the final judgment.

**B.     A Texas Jury's Consideration of Mitigating Evidence**

Aranda's federal petition raised claims challenging how a Texas capital jury considers an inmate's mitigating evidence.  Specifically, Aranda claimed that Texas law failed to provide an adequate vehicle for jury consideration of mitigating factors relevant to his sentence.  Aranda's post-judgment arguments require significant discussion.

Texas' capital-punishment scheme involves a bifurcated trial in which a jury considers an inmate's sentence after convicting him of capital murder.  In the penalty phase, the parties present aggravating and mitigating factors for the jury's consideration in answering specific questions.  At the time of trial, Article 37 .07l(b) of the Texas Code of Criminal Procedure

required a jury to determine a capital defendant's sentence by answering three special issue questions:

> (1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;
>
> (2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and
>
> (3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased.

The trial court delivered all three special issues to the jury.  The question before this Court is whether those questions provided an adequate vehicle for the consideration of mitigating evidence.

Aranda did not call any penalty phase witnesses or present any evidence.  Aranda's case to mitigate against a death sentence came from counsel's closing arguments.  As recognized in the amended memorandum and order,

> [Aranda] presented no mitigating evidence at the penalty phase of his trial.  In his closing argument, however, [Aranda's] counsel did remind the jury that [Aranda] had been an inmate of the prison system in the past and that the State had not presented any evidence of [his] violent behavior in prison.  Furthermore, [Aranda] argues that at the guilt-innocence phase of his trial evidence indicated (1) that [he] had no knowledge of his brother's plans to pick up marihuana in Laredo, (2) that he was not armed until he and his brother picked up the marihuana, (3) that he had been drinking that night (4) that immediately prior to the shooting a police officer was walking towards the car with his hand on his service revolver, and (5) that the bullet that killed officer Alvarez may not have come from the gun [Aranda] fired.

 (Docket Entry No.  27 at 69-70).

The law in 1979 did not require a separate special instruction for jurors to consider mitigating evidence.  At that point, the Supreme Court had held that a state capital sentencing system must satisfy two requirements to be constitutionally acceptable: it must "rationally

narrow the class of death-eligible defendants" and "permit a jury to render a reasoned, individualized sentencing determination based on a death-eligible defendant's record, personal characteristics, and the circumstances of his crime." *Kansas v. Marsh*, 548 U.S. 163, 174 (2006) (relying on *Furman v. Georgia*, 408 U.S. 238 (1972)).   Three years before Aranda's trial, the Supreme Court upheld the constitutionality of Texas' capital sentencing statute in *Jurek v. Texas*, 428 U.S. 262 (1976).   Finding that the constitutionality of the Texas scheme "turns on whether the enumerated [special issue] questions allow consideration of particularized mitigating factors," the Supreme Court found that the Texas Court of Criminal Appeals interpreted the statute in a way that let a jury consider mitigating circumstances.   *See id.* at 272-73; *see also Franklin v. Lynaugh*, 487 U.S. 164 (1988).

A few months after Aranda filed his federal petition, however, the Supreme Court decided that, even though the deliberateness and future dangerousness special issues allowed a jury to give partial consideration to evidence of mental retardation and childhood abuse, some mitigating evidence still had "relevance to [a defendant's] moral culpability beyond the scope of the special issues" to which a jury could not "express its reasoned moral response . . . in determining whether death was the appropriate punishment."   *Penry v. Lynaugh*, 492 U.S. 302, 322 (1989).

Aranda's petition raised several claims involving *Penry*-like arguments.   Specifically, in claim twenty-one Aranda argued that "the Texas Death Sentencing Statute, on its face and as applied in this case, provides inadequate guidance to the jury on its ability to consider and act upon mitigating evidence proffered by the defense as the basis for a sentence less than death."[2]

---

[2]      In claim twenty-three, Aranda argued that "his counsel could have presented evidence of the Petitioner's family history, juvenile delinquency, past experiences with police brutality, and past instances of head injury, had the Texas sentencing statute allowed the jury to give such evidence independent mitigating weight." (Docket Entry No. 27 at 73).   The Fifth Circuit "has repeatedly rejected the claim that the 'Texas statutory capital sentencing

Aranda's facial challenge was rejected because "*Jurek v. Texas* upheld the constitutional validity of the Texas capital murder scheme" and "nothing in this Petition which would require a change in the *Jurek* holding." (Docket Entry No. 27 at 67. With respect to his as-applied challenge, counsel's punishment-phase arguments implicated two categories of mitigating evidence: (1) an absence of evidence that he had been violent in prison and (2) evidence that "the shooting lacked sufficient 'deliberateness' to require an affirmative answer to the first special statutory question." (Docket No. 27 at 67). The second category of mitigation was considered to involve "residual doubt" as addressed in the Supreme Court's recent decision in *Franklin v. Lynaugh*, 487 U.S. 164 (1988). In *Franklin*, a plurality found no constitutional error in whether Texas' special issues allowed a jury to consider residual doubt concerning a defendant's guilt or intent. The *Franklin* decision was "unremarkable" because the Supreme Court has "never held that capital defendants have an Eighth Amendment right to present 'residual doubt' evidence at sentencing . . . ." *Abdul-Kabir v. Quarterman*, 550 U.S. 233, 250-51 (2007) (citing *Oregon v. Guzek*, 546 U.S. 517, 523-27 (2006)). The amended memorandum and order held that "[t]here is nothing in the record to indicate that he requested special instructions regarding the jury's consideration of residual doubt, and as *Franklin* holds nothing in the Texas capital sentencing scheme prevents the jury from considering residual doubt with regards to a defendant's deliberateness." (Docket Entry 27 at 71). "As for the jury's ability to give mitigating weight to [Aranda's] prison record," the *Franklin* decision meant that "the jury was free to evaluate the [Aranda's] disciplinary record as evidence of his character in response to the second special statutory question." (Docket Entry No. 27 at 71) (citing *Franklin*, 487 U.S. at 177).

---

scheme is invalid as preventing or chilling defense counsel's development of mitigating evidence.'" *Miniel v. Cockrell*, 339 F.3d 331, 338 (5th Cir. 2003) (quoting *Briddle v. Scott*, 63 F.3d 364, 378 (5th Cir. 1995)). Accordingly, "'a petitioner cannot base a *Penry* claim on evidence that could have been but was not proffered at trial.'" *Miniel*, 339 F.3d at 338 (quoting *Pierce v. Thaler*, 604 F.3d 197, 202 (5th Cir. 2010)).

The decades that have passed have brought about numerous decisions from federal and state courts that have expanded on the *Penry* holding.  Other decisions have elaborately traced the "long and contentious line of cases" in which *Penry* law has evolved.  *Pierce v. Thaler*, 604 F.3d 197, 204 (5th Cir. 2010); *see also McGowen v. Thaler*, 675 F.3d 482, 490-91 (5th Cir. 2012); *Blue v. Thaler*, 665 F.3d 647, 664 (5th Cir. 2011).  As a result of the *Penry* decision, the Texas Legislature in 1991 amended the statute to include a new specific mitigation special issue.  TEX. CODE CRIM. PRO. art. 37.0711, § 2(e)(1).  For the nearly three decades since, federal courts have grappled with Texas' pre-1992 sentencing scheme that lacked a specific mitigation instruction or question.  The law has coalesced into a constitutional expectation that "sentencing juries must be able to give *meaningful* consideration and effect to *all* mitigating evidence that might provide a basis for refusing to impose the death penalty on a particular individual, notwithstanding the severity of his crime or his potential to commit similar offenses in the future."  *Abdul-Kabir*, 550 U.S. at 246 (emphasis added).

In recent years, the Fifth Circuit has granted relief in nearly all cases in which the petitioner raised a procedurally adequate *Penry* claim.[3]  Relief, however, is not automatic.  In application, the Supreme Court's *Penry* jurisprudence involves a two-part inquiry tied to the specific evidence presented at trial.  *See Mines v. Quarterman*, 267 F. App'x 356, 361 (5th Cir. 2008) (describing the process by which a court assesses a *Penry* claim); *Coble v. Quarterman*, 496 F.3d 430, 444 (5th Cir. 2007) (same).  A reviewing court first asks whether the complained-of evidence meets a low relevance standard.  *See Tennard v. Dretke*, 542 U.S. 274, 283 (2004).

---

[3]        *See Norris v. Davis*, 826 F.3d 821, 830 (5th Cir. 2016); *Jones v. Stephens*, 541 F. App'x 399, 406 (5th Cir. 2013); *McGowen v. Thaler*, 675 F.3d 482, 495-96 (5th Cir. 2012); *Pierce v. Thaler*, 604 F.3d 197, 211-12 (5th Cir. 2010); *Rivers v. Thaler*, 389 F. App'x 360, 361 (5th Cir. 2010); *Mines v. Quarterman*, 267 F. App'x 356, 362 (5th Cir. 2008); *Chambers v. Quarterman*, 260 F. App'x 706, 707 (5th Cir. 2007); *Garcia v. Quarterman*, 257 F. App'x 717, 723 (5th Cir. 2007); *Coble v. Quarterman*, 496 F.3d 430, 433 (5th Cir. 2007); *but see Smith v. Quarterman*, 515 F.3d 392, 414 (5th Cir. 2008).

Second, a court must decide whether the defendant's evidence had "mitigating dimension beyond" the special issue questions actually posed to the jury. *Id*. at 288; *see also Smith v. Texas*, 543 U.S. 37, 43-45 (2004) (reaching the same result in a case on certiorari review from the Texas Court of Criminal Appeals). "[W]hen the defendant's evidence may have meaningful relevance to the defendant's moral culpability 'beyond the scope of the special issues,'" omitting a specific mitigation question amounts to constitutional error. *Abdul-Kabir*, 550 U.S. at 254 n.14.

While the development of *Penry* jurisprudence has upset numerous pre-1992 capital sentences in Texas, the law has not undercut relevant portions of the *Franklin* holding. Whether or not the special issues comprehend evidence of residual doubt is not a question of constitutional dimension. The Supreme Court has "never held that capital defendants have an Eighth Amendment right to present 'residual doubt' evidence at sentencing [.]" *Abdul-Kabir*, 550 U.S. at 251.[4] Residual doubt—such as whether the circumstances of the offense demonstrate a lack of intent—"is not relevant to a jury's deliberations in the punishment phase." *Williams v. Davis*, 192 F.Supp.3d 732, 766-67 (S.D. Tex. 2016); *see also United States v. Jackson*, 549 F.3d 963, 981 (5th Cir. 2008) (finding that a criminal defendant has no right to a sentencing instruction on residual doubt). Accordingly, *Penry* jurisprudence since judgment has

---

[4]      Two primary reasons underlie the Supreme Court's refusal to find a constitutional right to present sentencing evidence of residual doubt. First, "sentencing traditionally concerns how, not whether, a defendant committed the crime." *Oregon v. Guzek*, 546 U.S. 517, 526 (2006). Accordingly, residual doubt inserts irrelevant details into the proceedings: "whether, not how, he did so." *Id*. at 526. Second, "the parties previously litigated the issue to which the evidence is relevant-whether the defendant committed the basic crime. The evidence thereby attacks a previously determined matter in a proceeding at which, in principle, that matter is not at issue. The law typically discourages collateral attacks of this kind." *Id*. (citing *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). The Supreme Court has recognized that allowing a jury to condition its sentencing decision on residual doubt is "arguably inconsistent with the common practice of allowing penalty-only trials on remand of cases where a death sentence-but not the underlying conviction-is struck down on appeal." *Franklin*, 487 U.S. at 173, n. 6; *see also Holland*, 583 F.3d at 283.

not changed the result as to whether the special issues unconstitutionally prevented jurors from considering evidence raising residual doubt.

Aranda disputes whether the deliberateness special issue provided an adequate vehicle for the jury to consider his "residual doubt" evidence, particularly related to his consumption of alcohol before the murder.  Aranda, however, has not convincingly shown that the jury as not able to give full effect his mitigating evidence and express their reasoned moral response through the deliberateness special issues. If jurors determined that the circumstances surrounding the offense, such as Aranda's drinking or involvement in the drug transaction, somehow mitigated his decision to kill, they could have answered the deliberateness special issue in the negative. Aranda has not shown that the dramatic change in *Penry* law since the court entered judgment would require a different conclusion.

Likewise, case law has not changed *Franklin*'s holding that the future-dangerousness special issue encompassed a jury's consideration of good-behavior evidence.  *See Franklin*, 487 U.S. at 178.  The Supreme Court's more-recent *Penry* jurisprudence has not altered *Franklin*'s understanding that "most cases evidence of good behavior in prison is primarily, if not exclusively, relevant to the issue of future dangerousness."  *Abdul-Kabir*, 550 U.S. at 250-51.

Much has changed in *Penry* jurisprudence since the court denied Aranda's petition.  This Court, however, finds that those developments do not change the result in this case.

### C.    Aranda's Confession

In his second ground for relief, Aranda claimed that "his confession [to police officers] was coerced, and that the trial and appellate courts erroneously concluded the [his] confession was voluntary."  (Docket Entry No. 27 at 16).  The essence of Aranda's arguments on Rule 59 review is that the amended memorandum and order failed to discuss adequately the relevant

analysis.  *Moran v. Burbine*, 475 U.S. 412 (1986) set forth a two-prong test for a *Miranda* waiver: (1) whether the waiver was the product of a free and deliberate choice rather than intimidation, coercion, or deception; and (2) whether the waiver was made with a full awareness of both the nature of the right being abandoned and consequences of the decision to abandon it. Aranda claims that new law emphasizes the importance of a confession being both knowing and voluntary and the amended memorandum and order erred by only discussing one of them.[5]

While Aranda argues that new law requires Rule 59 relief, he does not identify any precedent that materially changed how courts assess the constitutionality of a confession.  Cases reiterating the need to discuss both prongs are not an intervening change in controlling law.

Aranda also argues manifest error in the denial of his claim.  Aranda claims that the amended memorandum and order stopped short by not examining whether he made a knowing

---

[5]      On direct appeal, the Court of Criminal Appeals denied Aranda's *Miranda* claim as follows:

[Aranda] recites part of his testimony at the *Jackson v. Denno* hearing that he had just been released from the hospital and placed in jail prior to the confession. His testimony revealed that he left the hospital in a wheelchair and a doctor had given him "some pills" and that he "couldn't even walk. Because I still had pain." When asked if he was "still hurting" when he talked to the officers he replied they "forced him to come out" of the cell. When asked if he was bleeding at the time of the statement, he responded, "I just had an operation. They took a bullet and it hurt." When asked how he felt, he stated, "I couldn't talk to nobody. But they took me over there to the cell. They carried me over." He never directly answered any of his counsel's questions. The district attorney, who was present, testified that [Aranda] was suffering from a couple of gunshot wounds—"one to the middle finger of his left hand and a semi-superficial wound to the shoulder, upper left shoulder." It was shown that [Aranda] was given his warnings, etc., that he was permitted to confer with his brother and that he wrote out his own confession. Other than the meager testimony of the [Aranda] all the evidence was to the contrary. The [Aranda] contended he asked for "my lawyer" four times. The fact that the [Aranda] ever asked for a lawyer at any time was denied by the district attorney, the deputy sheriff and a police officer who was present. The trial court found that [Aranda] did not ask for a lawyer. The [Aranda] argues in conclusion under the point of error "Since the State failed to produce any competent evidence to rebut the fact that [Aranda] was under the influence of some sort of medication given him due to his bullet wounds, and was weak and unable to clearly think, the confession given by [Aranda] was clearly inadmissible." The difficulty with [Aranda]'s approach is that there is no evidence to show that [Aranda] was under the influence of medication to the extent he could not clearly think or voluntarily give a confession. His testimony did not establish that. The State showed he walked to the interrogation room, appeared to be mentally alert, understood the warnings, conferred with his brother, etc., before giving the confession.

*Aranda*, 736 S.W.2d at 706.

and intelligent waiver of his rights.  In a footnote, the decision observed that Aranda "makes no claim that his confession was not intelligently made, or that he did not understand the *Miranda* warnings when given." (Docket Entry No. 27 at 24).  Aranda's habeas petition argued almost exclusively that his confession was "involuntarily coerced as the result of a police beating." (Docket Entry No. 2 at 18).  Respondent correctly observes that "[t]he bulk of Aranda's *Miranda* briefing dealt with whether law enforcement coerced Aranda into confessing." (Docket Entry No. 63 at 36).  Aranda only passingly argued that the trial court erred in finding that he understood the waiver of his rights.  To the extent that the briefing discussed the knowing and intelligent waiver of his rights, Aranda's "argument fixated on how the *state court's analysis* was wrong by only concerning itself with voluntariness." (Docket Entry No. 63 at 37).  Aranda objects to this interpretation of his briefing and the resultant legal analysis but does not show a manifest error of law or fact.  Aranda has not shown that he merits Rule 59 relief on his confession claim.

## IV.    Appeal

When an inmate seeks appellate review after the effective date of AEDPA, its standards govern whether an appeal should go forward.  *See Slack v. McDaniel*, 529 U.S. 473, 482 (2000); *Kunkle v. Dretke*, 352 F.3d 980, 984 (5th Cir. 2003); *Goodwin v. Johnson*, 224 F.3d 450, 458 (5th Cir. 2000).  AEDPA prevents appellate review of a habeas petition unless the district or circuit courts certify specific issues for appeal.  *See* 28 U.S.C. § 2253(c); Fed. R. App. Pro. Rule 22(b).  Aranda has not yet requested that this Court grant him a Certificate of Appealability ("COA"), though this Court can consider the issue *sua sponte*.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).  A court may only issue a COA when "the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *see also*

*Slack*, 529 U.S. at 484.  Under the appropriate standard, this Court will not certify any issue for review by the Fifth Circuit.

## V.       Conclusion

The Court denies Aranda's motion under Rule 59 of the Federal Rules of Civil Procedure.  All other requests for relief are denied.  The Court will not certify any issue for appellate consideration.

It is so ORDERED.

SIGNED on this 4th day of May, 2020.

_____
Kenneth M. Hoyt
United States District Judge